UTZ ET AL *v.* WOLF ET AL.

[No. 10,277. Filed February 17, 1920.]

LOTTERIES.—*Gift Enterprise.*—*Public Policy.*—*Statute.*—A contract for an advertising campaign promoted by an agency furnishing stamps to retail merchants, who agreed to distribute them among their customers, and which were exchangeable for tickets entitling the holder to an undivided interest in an automobile to be furnished by the agency and to be disposed of by a method to be determined upon at a meeting of the ticket holders, where the tickets stated that "the meeting may decide to raffle off the automobile using the numbered stubs to draw from," and where each ticket represented the proportionate value of less than one cent, *held* void as against public policy and as in violation of §2464 Burns 1914, Acts 1905 p. 584, it being contemplated that the ticket holders would agree to dispose of the machine by lottery to one of their number.

From DeKalb Circuit Court; *Dan M. Link,* Judge.

Action by Alonzo L. Utz and others against Samuel Wolf and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Hoffman & Shearer,* for appellants.

*Edgar W. Atkinson, Harry F. Kennerk* and *Herbert L. Somers,* for appellees.

NICHOLS, C. J.—This cause, originating in the Allen

Circuit Court, was on change of venue transferred to the DeKalb Circuit Court, in which court an amended complaint was filed. To the amended complaint the appellees separately and severally demurred, which demurrer was sustained, and, the appellants failing and refusing to plead further, the court thereupon rendered judgment in favor of appellees and against the appellants that they take nothing by their suit and that the appellees recover costs.

The court's ruling upon the demurrer is the only error assigned.

The facts, substantially as stated by appellants in their brief, are as follows: At the time of the transactions involved in this case the appellants constituted a partnership under the name of the American Copying Company, whose business had to do with putting on advertising campaigns for retail merchants in different localities. The system was worked out as follows: Contracts were procured from several merchants in a locality similar to the contract filed as an exhibit with the amended complaint in this action. The appellants then printed and distributed what they called their Automobile Stamp Directory for that locality, which contained the display advertisements of all the contracting merchants, and also blank spaces in each directory for the purpose of pasting therein 100 purchase stamps. The purchase stamps were printed by the appellants and furnished, as provided in the contracts, to the merchants at so much per hundred. It was provided in the contracts that the merchants were to give these stamps to their customers, one stamp to be given at time of purchase for each ten cents represented in the purchase, the merchant agreeing to order from the appellants at the

price agreed sufficient stamps to supply his trade for the period of the campaign, which in this particular case extended over a period of six months beginning October 15, 1914. The appellants were also to furnish an automoble as described in the contract which was to be placed on display by one of the merchants during the campaign, and which at the close of the campaign was to become the sole property of the holders of certain tickets procured as hereinafter specified. The Automobile Stamp Directories were to be distributed among the general buying public, and the customers of the merchants participating in the campaign were instructed to paste their purchase stamps obtained at the time of their purchases in the blank spaces provided in said directories. One of the merchants was designated to give out tickets to the customers of all the merchants in exchange for filled Automobile Stamp Directories, and it was these tickets which entitled the holder to an undivided interest in the automobile at the termination of the campaign. Upon each ticket was to be printed a certain date, the same to be within one month from the termination of the campaign, upon which date a meeting of the holders of all tickets issued should be held to agree upon what disposition was to be made of the automobile, at which meeting each ticket holder was to be entitled to one vote for each ticket held by him, the majority of the votes at the meeting to determine the disposition to be made of the automobile.

In this instance the appellants procured the contracts of several merchants in the city of Fort Wayne, Indiana, among them the appellees. In those contracts the appellees' store was the one designated to give out tickets in exchange for the filled directories. Performance of the contracts was entered upon, the

appellants printed and started the distribution of the directories and advertising matter and started to furnish the stamps to the merchants as agreed, and consigned the automobile to the appellees at Fort Wayne, whereupon a concerted movement was started among the contracting merchants to break their contracts and refuse to go on with the campaign as agreed. Each and all of the merchants thereupon refused to carry out their agreements, the appellees on their part refusing to allow the automobile to be displayed at their store, and refusing to distribute and give out the tickets as agreed, and refusing to order or accept any stamps to supply their trade.

After tendering performance of the contract on their part and making an effort to get the appellees and other contracting merchants to comply with their contracts, which efforts were unsuccessful, the appellants brought several suits against said merchants in the Allen Circuit Court at Fort Wayne for damages for the breach of their contracts. Among them was the present action, from the judgment in which this appeal is taken.

The substantial question in this case is as to the character of the contract which was the basis of the action, and the terms of which have been hereinbefore set out, as to whether it is in violation of the law of the state and infringes upon the principles of public policy.

It is provided by §2464 Burns 1914, Acts 1905 p. 584, that whoever sells a lottery ticket or tickets, or a share or shares in any lottery scheme or gift enterprise, or aids or abets any person or persons to engage in the same for the division of property, to be determined by chance, or makes or draws any lottery scheme or gift enterprise for a division of property

not authorized by law, shall, on conviction, be fined not less than ten dollars nor more than $500. There is no statute in Indiana defining gift enterprises, and the only legislative definition that we have before us is that of the legislative act of 1871 of the District of Columbia, which provided that: "Any person who shall sell or offer for sale any real estate, or article of merchandise of any description whatever, or any ticket of admission to any exhibition or performance * * * with the promise * * * to give or bestow * * * any article or thing, etc., shall be regarded as conducting a gift enterprise." In *Lohman* v. *State* (1881), 81 Ind. 15, the Supreme Court held that: "In common parlance, a gift enterprise is understood to be substantially a scheme for the division or distribution of certain articles of property, to be determined by chance, amongst those who have taken shares in the scheme, and the phrase has attained such notoriety as to justify us in taking judicial notice of what is meant and understood by the use of it. The definition thus given of a gift enterprise is in substantial accord with that which has been attached to it by the provisions of section 171 (§2464 Burns, *supra*), and is one which, it appears to us, may be safely adhered to." In the case of *Lynch* v. *Rosenthal* (1896), 144 Ind. 86, 42 N. E. 1103, 31 L. R. A. 835, 55 Am. St. 168, it was held that the sale of lots to be drawn by the purchasers, the advantages of location, character, size, or condition as between lots of the same class to be determined wholly by lot, while one prize lot was to be given to some one of the purchasers as a result of chance, was contrary to public policy and void. That case cites a number of cases developing different schemes of chance, holding the

same to be in the nature of lotteries and void as against public policy. We do not need to restate them here.

It is contended by appellant that the contract involved does not contemplate a division of the property by chance; that the only property given away is an automobile which is not subject to division. They further argue that the holders of the tickets were not to get them by any scheme of chance, but by the purchase of merchandise in certain quantities, and that the number of tickets that each person should hold was dependent upon the amount of merchandise purchased. Even this step is within the inhibition of our statute if we adopt the definition of a gift enterprise as given in the acts of 1871 for the District of Columbia. But let us look to the further steps which are contemplated, and in analyzing the contract and in determining the steps which it contemplates in the enterprise which it presents we shall deem it our duty to read between the lines, if necessary, to discover the real purpose and intent of the contracting parties; and if by our reading we discover that the real purpose, though not expressed in so many words, was eventually to violate the law of the state or offend public policy, then no relief can be granted to the appellants, even though the unlawful design and purpose of the transaction has been cleverly covered by the language used. Appellants say that after the title passes to the holders of the tickets jointly, the contract does not contemplate the commission of any unlawful act by such joint owners in the division of the property amongst them. We may well accept the statement of the appellants that the contract does not contemplate the division of an automobile among

them or any equitable division of the proceeds of the sale thereof. By the averments of the complaint the sales of appellees amounted to $250,000, and we may here call attention to the fact that these appellees were only one of the contracting parties involved in this scheme. If appellees' sales amounted to $250,000, then by the plan there would be 25,000 holders of tickets, counting one ticket to each holder, to participate in the ownership of the automobile, which by appellees' statement, which is not denied, was of the value of $800, each ticket representing the proportionate value of about one-third of a cent. We can hardly presume that it was contemplated that, at the meeting to be held, the holders of these 25,000 tickets would vote for the sale of the automobile and an equitable distribution of the proceeds of the sale thereof. What disposition was contemplated? It must be remembered that the purpose of the scheme was to increase the sales of the merchants who were to participate therein. If in advance it had been definitely declared that in the end the automobile would be devoted to some charitable enterprise or to some purpose other than for the benefit of the holders of the tickets, with that understanding would it be presumed that then the business of the merchants participating in the scheme would have increased? We think not. It was clearly the purpose of the respective merchants participating, by leading their customers to rely upon something else than the article sold, to tempt them by the promise of a greater value than that received in the purchase of the goods for which tickets had been given to them—a value not represented by the price paid for the goods so purchased. There was no possible chance of each of the

holders of tickets receiving the value for his pur-
chase, other than goods purchased, by reason of the
gift of the automobile to all of them in joint owner-
ship. We can reach but one conclusion, and that is
that it was contemplated at the time of entering into
this contract that upon the day when the holders of
the tickets met for the purpose of determining the
disposition of the automobile it was fully contem-
plated that they would dispose of it by chance, and
that the lucky holder of the ticket would be the one to
draw the same. We reach this conclusion by a gen-
eral inspection of the contract as a whole, and without
going beyond the record before us, but we are con-
firmed in our view by the statement in appellees' brief
that it was disclosed upon the ticket that "the meet-
ing may decide to raffle off the automobile using the
numbered stubs to draw from." There is no scheme
that could have been devised to have disposed of one
big prize to such a multitude of ticket holders except
the one by chance. It is to be observed that several
other merchants were to engage in the same scheme,
and we may presume that their sales would average
with the sales of appellees. Thereby a large amount
of money would be taken from the merchants or their
customers, which must of necessity increase the cost
of living to the customers or reduce what should be
the legitimate profits of the merchants. A third party,
a wholly unnecessary middleman, who furnishes no
equivalent for that which he appropriates to himself,
would be permitted to step between the merchants
and their customers. The sooner we can get away
from catch schemes or bargains to straight prices and
legitimate profits the better. We hold that the con-
tract discloses a gift enterprise or lottery, and that

as such it is contrary to the law of the state and against public policy.

The judgment of the trial court is affirmed.