PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* STAATS, ADMINISTRATOR.

[No. 12,329.    Filed December 8, 1925.]

1. APPEAL.—*Judgment not reversed for error in overruling demurrer to complaint when record shows fair trial on the merits.* —Where the record discloses a fair trial on the merits, an appellate tribunal will not reverse the judgment because of error in overruling a demurrer to the complaint. p. 683.

2. RAILROADS.—*It is no longer the law that, where a traveler was injured on a railroad crossing, it is presumed that he was guilty of contributory negligence.*—Since the enactment of the law making contributory negligence a defense (Acts 1899 p. 58, §380 Burns 1926, §362 Burns 1914), it is not the law that, where a traveler was injured on a railroad crossing, the presumption is that he was guilty of contributory negligence which was the proximate cause of his injury. p. 684.

3. RAILROADS.—*Plaintiff, in action for death at crossing, based on negligence of flagman in signaling decedent to cross, not required to allege or prove facts showing excuse for not seeing approaching train.*—In an action against a railroad company for causing death of a traveler at a crossing, based on the alleged negligence of flagman in signaling decedent to cross, plaintiff was not required to allege or prove any facts tending to show an excuse for failing to observe approach of train which struck him. p. 685.

4. RAILROADS.—*One crossing railroad on signal of watchman not required to exercise high degree of care otherwise required.*— A signal or direction given by a watchman at a railroad cross-

ing directing a traveler on the highway to cross is an affirmative assurance that there is no danger, and one acting on such assurance is not required to exercise the high degree of diligence and caution that would otherwise be required. p. 685.

5. RAILROADS.—*Placing flagman at highway crossing is recognition by railroad that crossing is an unusually dangerous one.*— The fact that a railroad placed and maintained a flagman at a highway crossing is a positive and unequivocal recognition that the crossing is an unusually dangerous one and that the services of such flagman are reasonably necessary to protect persons using such crossing. p. 685.

6. DEATH.—*Verdict for $10,000 for death of 44 year old man in good health, who had been successfully operating 147-acre farm and left a widow and son who were entirely dependent on him for support, not excessive.*—A verdict for $10,000 for the death of plaintiff's decedent, forty-four years old and in good health, who had successfully operated a 147-acre farm for seventeen years and had accumulated the usual stock and equipment for operating a farm of that size, was not excessive, where he left a widow and sixteen year old son who were entirely dependent upon him for support. p. 686.

From Wayne Circuit Court; *William A. Bond,* Judge.

Action by Fred A. Staats, as administrator, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.* By the court in banc.

*John L. Rupe,* for appellant.

*Gardner, Jessup & Hoelscher,* for appellee.

McMAHAN, J.—On July 4, 1920, Howard L. Cook, while crossing appellant's railroad in an automobile driven by himself, was killed, by reason of a collision between one of appellant's passenger trains at a point where said railroad crosses a certain street designated Main Cross street, and hereafter referred to as Main street, in Centerville in Wayne county. The cause was tried upon the amended fifth paragraph of complaint. From a judgment in favor of appellee, appellant appeals, the errors assigned being that the court erred in overruling the demurrer to said amended fifth para-

682    APPELLATE COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Staats, Admr.—83 Ind. App. 680.

graph of complaint, and in overruling appellant's motion for a new trial.

The complaint, omitting the formal parts thereof, alleges that Main street in said town crosses appellant's railroad tracks at right angles, there being at said crossing two main and two side tracks; that the view of a traveler when approaching the railroad from the north, as was appellee's decedent, is obstructed so as to prevent such traveler observing the approach of a train from the east until such traveler reaches a point twenty-eight feet north of the north track, which was used as the west bound track; that at such point such traveler can see a train 600 feet east of the crossing, and, after specifically describing the obstruction to the east, it is alleged that on July 4, and for some time prior thereto, appellant employed and kept a watchman at said crossing who was required to be at said crossing in the daytime and to give timely and sufficient warning of the approach of trains at said crossing; that on the morning of July 4, at about 9 a. m. an east bound passenger train, known as No. 802, stopped at the depot immediately south of appellant's main tracks and west of Main street, and after discharging passengers passed east over such crossing; that at the time said train was passing over said crossing, appellee's decedent was riding in and driving his automobile south on the west side of said street toward said tracks and crossing, and had stopped his automobile about sixty feet north of said tracks and there waited until after the train had entirely passed over the crossing; that immediately after said train had passed over said crossing, said watchman negligently beckoned and invited appellee's decedent and also an automobile south of said tracks to drive on and over said crossing, meaning thereby that no train was approaching and that it was safe to drive over said crossing; that immediately thereafter, the

automobile on the south side of the tracks proceeded
to and did cross over said tracks meeting and passing
appellee's decedent at a point about fifteen feet north
of the tracks; that immediately after the watchman
gave such signal and invitation to the decedent, he
started his automobile, running the same slowly and
carefully toward the crossing, all the time looking and
listening for trains and, after passing the automobile
coming from the north, he drove his automobile to a
point about three feet north of the tracks, when the
watchman then standing in the street south of the north
track suddenly called and warned the decedent to stop
when he for the first time saw train No. 21 approach-
ing about 150 feet east of the crossing and running at
a speed of sixty miles an hour. The decedent attempted
to stop his automobile to avoid a collision but that it
was then too late to do so. That said train ran against
decedent and killed him. That appellant, through said
watchman, negligently caused, induced, and invited the
decedent to attempt to cross said tracks at a time when
train No. 802 had just passed over said crossing and
when train No. 21 from the east was approaching said
crossing, and when the decedent was unable, by the
exercise of ordinary care, to have heard any signals of
the approach of train No. 21, or to see it.

Appellant, in a general way, contends that the com-
plaint is insufficient to charge negligence based upon
the action of the flagman, and that the allega-
1. tions show contributory negligence on the part
of the decedent. In discussing these proposi-
tions, appellant overlooks the fact that there has been
a trial upon the merits and that where the record dis-
closes a fair trial upon the merits, this court will not
reverse on account of the action of the court in over-
ruling a demurrer to the complaint. In discussing these
questions, appellant says that, for the purposes of a

demurrer to a complaint, all supposable facts may be considered in determining its sufficiency. *Kirmse* v. *Chicago, etc., R. Co.* (1920), 73 Ind. App. 537, 127 N. E. 837, is cited to support this contention. That case, however, is not in point. The court there was discussing the effect of giving an instruction when the evidence was not in the record. There is no merit in this contention.

Appellant also contends that where a traveler on a highway is injured on a railroad crossing, the presumption, in the absence of anything to the contrary,

2.    is that he was guilty of negligence and that the proximate cause of his injury was his own negligence. It may be conceded that this was the law prior to the enactment of the statute making contributory negligence a matter of defense, but it is not the law in this state at this time. *Malott* v. *Hawkins, Admx.* (1902), 159 Ind. 127, 63 N. E. 308, is cited by appellant to the proposition that the statute referred to in no way changes the requirement of the law in this class of cases in regard to the duties and obligations of a traveler on a highway approaching a railroad crossing. It was there said: "Where the facts and circumstances surrounding a particular case are such as to warrant different inferences, so that an impartial, sensible man may draw the inference and conclusion that the injured person was guilty of contributory negligence, while another man, equally sensible and impartial, might draw a different conclusion, such question is one that, under appropriate instructions as to the law, should be submitted to a jury." We hold the demurrer to the complaint was correctly overruled.

The specifications in the motion for a new trial relied upon for reversal are the refusal to give appellant's requested instructions Nos. 1 and 8, the giving of the court's instruction No. 2, and excessive damages.

NOVEMBER TERM, 1925.	685.

Pittsburgh, etc., R. Co. *v.* Staats, Admr.—83 Ind. App. 680.

In such cases as this, the plaintiff is not required to allege or prove that he was free from contributory negligence. The failure to observe the approach of a train may be contributory negligence, and facts tending to show an excuse for such failure are facts tending to disprove contributory negligence. Appellee was not required to allege any facts showing an excuse on the part of his decedent for failing to observe the approach of the train, although the rule was otherwise before the enactment of the statute changing the burden of proof as to contributory negligence in actions for personal injuries. *Pittsburgh, etc., R. Co.* v. *Cottman* (1913), 52 Ind. App. 661, 101 N. E. 22.

A signal or direction given by a watchman at a railroad crossing directing a traveler on the highway to cross is an affirmative assurance that there is no danger. A person acting under such an assurance is not required to exercise the high degree of diligence and caution that would otherwise be required of him in approaching a crossing. *Pittsburgh, etc., R. Co.* v. *Cottman, supra; Cleveland, etc., R. Co.* v. *Harrison* (1912), 178 Ind. 324, 98 N. E. 729. The fact that appellant placed and maintained a flagman at this crossing is a positive and unequivocal recognition that the crossing was an unusually dangerous one, and that the services of such flagman at that point were reasonably necessary to protect persons traveling on the street using such crossing. *Pittsburgh, etc., R. Co.* v. *Tatman* (1919), 72 Ind. App. 579, 122 N. E. 357.

Instruction No. 1, tendered by appellant was an instruction to find for appellant. In support of the contention that the court erred in refusing to give this instruction, appellant says: (1) There is "no sufficient allegation of facts to sustain a judgment predicated upon the act of the flagman"; (2) there is no evidence that the decedent saw any signal given by the flagman

or acted upon such signal; (3) there is no evidence to show that the decedent did anything for his protection, but that the evidence shows he did nothing to ascertain if it was safe to go over the crossing; and (4) that the evidence shows the decedent did not look, or that, if he looked, he saw the train and assumed the risk of injury in attempting to make the crossing. We are not impressed with any of these contentions. This cause was not only fairly but was well tried. It has been well presented on appeal, both by briefs and in oral arguments, and after a study of the evidence, we are thoroughly convinced there was no error in refusing to give this instruction. In fact, its giving would have constituted reversible error.

The next contention is that the verdict is excessive. The verdict was for $10,000, the limit allowable under the statute. The decedent at the time of his death was forty-four years of age. He left a widow and a sixteen year old son, who were entirely dependent upon him for their support. At the time of his death, and for many years prior thereto, he with his family had lived on and farmed a 147-acre farm, which had formerly been owned by his father, but which by the will of his father had been devised to his mother for life with remainder to the decedent and his sisters, and for which he paid an annual rental to the mother of $400. He had lived on and farmed this farm about seventeen years. He had the usual stock and equipment for operating a farm of that size, was in good health, and he and his family got their support from his work on the farm. While there is no direct evidence as to the value of or amount of his net yearly income devoted to the support and maintenance of his wife and child or what the support they received from him was worth, we think the evidence was sufficient to justify the jury in returning a verdict for a substantial amount,

and the fact that this verdict is for the limit allowable by the statute is not sufficient to warrant us in holding it to be excessive.

The judgment is affirmed.