# Wytheville

## NORFOLK AND WESTERN RAILWAY COMPANY V. NANNIE MAY BENTON, ADMINISTRATRIX, ETC.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*F. M. Rivinus, W. Moncure Gravatt* and *J. M. Townsend,* for the plaintiff in error.

*Archer L. Jones* and *George E. Allen,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The defendant in error, who hereafter will be referred to as the plaintiff, brought an action against the railway company to recover damages for the death of her husband who was killed by a train at a city railway crossing in Hopewell, Virginia. The case was tried twice. The first trial was had in the Circuit Court of the city of Hopewell and when all of the evidence of the plaintiff had been introduced the attorneys for the railway company moved to strike it out. The circuit court sustained the motion and struck the entire evidence which had been introduced by the plaintiff, whereupon the plaintiff took a non-suit and later instituted her

action in the Corporation Court of Hopewell. The case was tried by a jury and resulted in a verdict in favor of the plaintiff for $10,000.00. Judgment was regularly entered upon the verdict.

Numerous objections were made to the verdict. Motions to strike the evidence and to set aside the verdict upon the usual grounds were made and overruled. Other objections were made to the jurors who tried the case and to the instructions given and refused, but it is not necessary to discuss these two last objections. The motion to strike the evidence of the plaintiff and to set aside the verdict will be discussed together and the correctness of the court's ruling thereon, determined.

The deceased met his death in attempting to drive his Chevrolet automobile across the railway tracks upon a city street. The day was clear and the time was approximately one o'clock Sunday afternoon. The street crosses the tracks of the railway at an angle of one hundred and twenty degrees. There are four tracks and the plaintiff's decedent was driving from the north to the south side of them. George Benton, who was nineteen years old and a brother of the deceased was the only other person in the automobile. The automobile was being driven at approximately ten to fifteen miles per hour as it was driven across the tracks, and the train, composed of a number of freight cars, was running at approximately the same speed on the main track as it crossed the street. On a side track which was the first track crossed, there were two or three cinder cars standing, which for a short distance partially obstructed the view of the driver of the automobile. They were fifteen to twenty feet west of the west line of the crossing, according to the testimony of George Benton. A clear view of the engine and train, however, could be had as the crossing was approached because one's vision of the train would have been unobstructed for a considerable distance beyond the cars on the siding and a partial view of the engine could have been had over the top of the cars on the siding.

When trains passed over this crossing the railway company usually stationed on it a flagman to warn and stop approaching traffic in order that the train could pass without injuring any one. On the day in question a flagman was standing on the crossing and in the middle of the tracks for the purpose stated, and just before the accident he, according to the testimony of George Benton, was there, facing the west, the direction from which the train was approaching, holding up his left hand to the train and with his right hand, he "waved" the plaintiff's decedent "across." Benton said: "He had his left hand up like this facing the train, waving us across with his right hand." He was asked: "Did you see the *flagging* plainly" to which he replied "yes" and then he was asked: "Did you see him *waving* plainly" to which he replied "yes, sir." He testified that the plaintiff's decedent was looking straight across the tracks just before they drove across.

Benton testified that *he* looked for trains to the east and to the west before they drove across the tracks but there is no evidence in the record which shows or even tends to show that the brother, the driver of the car, ever looked for any trains at all before he started across. Witness Benton says that his brother was looking straight across the tracks.

Counsel for the plaintiff takes the position that the flagman invited the plaintiff's decedent to cross by "waving him across" and whether he was guilty of such contributory negligence in driving across, as bars a recovery in failing to look for trains, was a jury question. On the other hand counsel for the railway contends that for one to attempt to go across a crossing without looking for trains is contributory negligence as a matter of law and bars a recovery even though a flagman is stationed on the crossing.

The statute which requires the employees of a railway company to give certain signals upon the approach of a train to a highway crossing has no application here. However all of the evidence, which is denied only by the negative testimony of George Benton, shows that the regular statu-

tory signals were given and George Benton admits that the bell on the engine was ringing before it reached the crossing. He says that he did not hear the whistle but the positive testimony convincingly shows that it was blown for the crossing.

If the verdict and judgment is sustained, it must be sustained on the sole testimony of George Benton because there is no other testimony which even tends to support it. In other words, if Benton's testimony is eliminated the verdict cannot stand.

Counsel for the plaintiff has been driven to rest the entire case upon the invitation of the flagman to plaintiff's decedent to cross. Unquestionably, if there had been no flagman at the crossing there could have been no recovery because the driver of the car failed to look for approaching trains.

If George Benton's testimony is incredible and unbelievable and for that reason eliminated, the judgment must be reversed because the great preponderance of the testimony shows or tends to show conditions entirely different from those described by him. His testimony is in conflict with the weight of the évidence on the material point as to whether the flagman "waved" the plaintiff's decedent to cross the tracks.

This preponderance of the testimony tends strongly to show that the flagman was standing in the middle of the crossing, facing north, the direction from which the automobile was moving, and not facing west, the direction from which the train was coming; that he was standing there with both arms outstretched to stop traffic from entering the crossing from the north; that he saw the automobile approaching; that the two men in the automobile as they started across had their heads turned to the east as though they were looking at some persons standing on that side; that they never turned their heads to the west, from which direction the train was approaching and that the car was being driven as though it would collide with the flagman who was

compelled to jump out of its course. There is no evidence in the record which even tends to show that Frazier Benton, the plaintiff's decedent, ever looked to the west for trains either before or after he drove on the crossing.

If George Benton's testimony be taken as true, this pertinent question arises: Did Frazier Benton have the right to rely solely and exclusively upon the invitation of the flagman to cross the tracks without looking for the approaching train which he undoubtedly could have seen had he looked? In other words, where a flagman is stationed on a crossing by a railway company to warn drivers of automobiles of the approach of trains, is a driver completely relieved and excused from looking for trains? Can he, under such conditions, fail to take the precaution of looking, and still be free from contributory negligence as a matter of law which would bar a recovery? Does he have to take any precaution whatever for his safety where there is a flagman on the crossing "waving him across"?

Before attempting to answer those questions it might be well to consider Benton's testimony a little further. He said that the flagman was facing the west from which direction the train was coming; "he had his left hand up like this facing the train, waving us across with his right hand." He said he saw the "flagging" plainly and that he saw the "waving" plainly. If George Benton told the truth then the flagman was standing in front of them "flagging" the train with his left hand and "waving them across" with his right. This action of the flagman was bound to have given them notice of the train's approach, and with such notice Frazier Benton, who also had a plain view of the train, was guilty of contributory negligence as a matter of law when he failed to look for and see it.

The court has held that the erection of gates, gongs or other devices at highway or street crossings to warn travelers of approaching trains does not excuse them from exercising ordinary care and caution at the crossing. *Kimball & Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901, 904; *So. Ry.*

Co. v. *Davis,* 152 Va. 548, 147 S. E. 228; *Seaboard Air Line Ry. Co.* v. *Terrell,* 149 Va. 344, 141 S. E. 231; *N. & W. Ry. Co.* v. *Wellons' Adm'r,* 155 Va. 218, 154 S. E. 575.

In *Kimball & Fink* v. *Friend, supra,* the court said: "And while courts and text-writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveler to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him, as if there was no such invitation." In support of this rule Buchanan J. cites a great number of cases and textbooks.

It is admitted by the railway company that the full force of the "stop, look and listen" rule does not apply in this case, but it is earnestly insisted by the company, that notwithstanding the presence of the flagman at the crossing for the purpose of stopping street traffic the plaintiff's decedent was not warranted in driving in front of the train, without taking, at least, some precaution. This certainly seems to be a reasonable position and it is supported by respectable authority.

Under the law generally, trains have the right of way at street or highway crossings and they are not required to be stopped before proceeding over a crossing.

In 52 C. J. page 331, the rule is stated thus:

"The presence of a flagman, gates, or other signal at a crossing and the fact that they are an indication of safety is ordinarily held not to relieve the traveler from his duty to look and listen or to stop, look, and listen before crossing, and this is particularly true where there is a flagman present who gives a signal to stop. There is no authority, however, to the effect that the traveler is relieved from the duty of stopping, looking, and listening where the gates at a crossing are open or where a flagman is on duty, or where a statute provides that he shall be relieved from such duty if a signal bell at the crossing is defective and no notice of such condition is given by the company. The traveler is not relieved from the duty of stopping, looking, and listening in

a jurisdiction in which such duty is imperative by the fact that he misinterpreted a flagman's signal as meaning that he should proceed."

And again in 52 C. J. page 337, this is said:

"In the absence of anything to cause a reasonably prudent person to hesitate, one approaching a railroad crossing who is signaled by a flagman or watchman that it is safe to cross, has a right to rely upon such assurance, and in attempting to cross the same degree of care is not required of him as if there had been no such direction or assurance, especially where such signal is by statute or ordinance an assurance of safety. But he cannot rely implicity upon the judgment of the flagman or watchman as to his safety in crossing, but must use the prudence and caution that a reasonably prudent man would use in like circumstances, failure to exercise such caution constituting contributory negligence, as where he fails to look and listen when by so doing the approaching train could have been discovered. But generally, whether or not one who attempts to cross in reliance upon such signal or direction is negligent depends upon the circumstances of the particular case."

■■ The general rule undoubtedly does not require a traveler about to cross a railroad crossing to exercise the same vigilance in looking and listening for trains when he is signaled by a flagman to cross, as when the approaches are not guarded, and generally the circumstances under which, and to what extent, he may relax his vigilance depends on the surroundings. It is generally for the jury to determine whether he is guilty of contributory negligence under all the facts. But in the case at bar, the evidence is that Frazier Benton either did not look toward the approaching train which was in his plain view practically all the time, or if he looked no heed was given to it. Such conduct in either event is contributory negligence as a matter of law. The evidence is uncontradicted except by the testimony of his brother, that his head was turned in the opposite direction while going over the crossing and that he was neither

taking any precaution nor exercising any degree of care whatever. There is no evidence that he ever looked at any time in the direction of the train. The evidence discloses no excuse for his failing to see the train or his failure to take any precaution for his own safety at this crossing which he used often and with which he was thoroughly familiar. In no view of the evidence looking at it in the most favorable light for the plaintiff, was it reasonably possible for the jury, rightly instructed, to have exonerated, or excused him for his heedlessness and utter lack of ordinary care.

Negligence or contributory negligence is a mixed question of law and fact and where the material facts are in dispute or the evidence is conflicting, the question should not be withdrawn from the jury, but where there is no substantial conflict in the evidence or the facts are conclusively proven the question is one of law for the court. *Winchester* v. *Carroll,* 99 Va. 727, 40 S. E. 37; *Appalachian Power Co.* v. *Robertson,* 142 Va. 454, 129 S. E. 224.

Even though one is invited to cross a railroad crossing by a flagman, he is not justified in abandoning all caution and acting as though it is not dangerous to pass over it. He is not permitted to throw off from himself all responsibility for the outcome. *Hayes* v. *New York, N. H. & H. Ry. Co.,* 91 Conn. 301, 99 Atl. 694.

The cases of *Southern Ry. Co.* v. *Stockdon,* 106 Va. 693, 56 S. E. 713, and *Chesapeake Ferry Co.* v. *Cummings,* 158 Va. 33, 164 S. E. 281, 82 A. L. R. 790, have no application.

The doctrine of the last clear chance cannot be injected into the case because there is an entire absence of any evidence in the record that any of the agents or servants of the railway company ever had any last clear chance to save Frazier Benton.

If it be accepted as true that the flagman invited the plaintiff's intestate across the tracks, the only reasonable and fair conclusion that can be arrived at is that he attempted to cross without heeding the approach of the train, which not only was in his plain view but its proximity in-

dicated to him by the flagman in holding up his left hand to "flag" the train and by the sounding of the whistle and the ringing of the bell. If he had exercised the slightest caution his life would have been saved.

The other objections become immaterial as the verdict must be set aside and the judgment reversed. Final judgment will be entered here for the Norfolk and Western Railway Company.

*Reversed.*

EPES, J., concurring.