**DANIS, Admr., Plaintiff-Appellant, v. NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22259.   Decided December 3, 1951.

A. D. Nesbitt, Charles Redmond, Cleveland, for plaintiff-appellant.

Paul Lamb, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this Court on questions of law from a judgment entered for the defendant by direction of the Court upon defendant's motion at the conclusion of the plaintiff's case.

The plaintiff, a lady sixty-eight years of age, was walking north on the west side of West 61 Street from Clark Avenue toward the right of way of the defendant railroad company. When she got to the crossing she stopped while a west-bound train passed by. When the train had passed, a crossing watchman stationed on the south side of the crossing, motioned the pedestrians, including the decedent, to proceed. There were two other pedestrians described in the evidence,

who started across at the same time under the directions of the crossing watchman. At this crossing the defendant maintains six tracks. The east and west bound main tracks are in the center, two freight tracks, one on each side of the main tracks, and a switch track on the outer side of each of the freight tracks. Two crossing watchmen were stationed at this crossing, one on the north side and one on the south side. There was a box car standing on the southerly switch track, just west of the crossing at the time of the accident.

As the decedent proceeded across the intersection, a train was approaching from the west, which, when she was directed to proceed over defendant's tracks by the watchman, was obscurred from her view by the box car. When she was part' way across, the watchman on the south side "hollered" for the pedestrians, including the decedent, to come back, while the watchman on the north side was giving conflicting directions. The decedent was hit and instantly killed.

From an examination of the record, the plaintiff's evidence supported in every respect the allegations of negligence set forth in his petition.

The only question, therefore, is, does the plaintiff's evidence establish as a matter of law that his decedent was guilty of contributory negligence in crossing in front of an on-coming train?

The evidence which is relied upon by defendant is that after the decedent was advised to proceed across the intersection and she had gotten beyond the first track where a box car was so placed as to block the view to the west, she had, by the undisputed evidence, a clear view in the direction from which the train was approaching and, in the exercise of ordinary care, should have discovered the danger.

The evidence shows that decedent walked from 15 to 20 feet before reaching the track where she was struck by the on-coming train, and for that distance there was a clear and unobstructed view to the west. The evidence also shows that there was a great deal of noise about the intersection. An ice crusher was in full operation on the platform of the Ohio Provision Company, at the northwest corner of the intersection which added to the noise of the receding west-bound train which had just passed. To add to the confusion the defendant's watchmen were shouting contradictory instructions which way to go to avoid the immediate on-coming danger. The testimony of one of the pedestrians was in part as follows:

"A. You want me to tell what happened?

Q. Yes, tell what happened.

A. As the watchman told us to go, we started across and

as we got half-way toward the tracks I heard a yell for us to go back

 * * *

A. As we start across I got half-way onto the tracks and I heard the watchman holler for us to come back. At the time he hollered I don't know what made me look up, but as I looked up I seen the train rushing down on me, and I naturally looked across again because they were across on that side and I seen them, but instead of going back I just ran straight forward as fast as I could because I was naturally scared and when I turned around that is when I heard that she had been hit.

Q. When you heard the watchman to tell you to come back do you know where Mrs. Julia Dianiska was with respect to that crossing?

A. I don't believe she was quite as far as I was. She was heading onto the track I was on."

The witness who was operating the ice crusher testified in part:

"Q. - - of the Ohio Provision. What, if anything did you observe about this crossing?

A. Noise, commotion, so I looked up. I don't know what it was. I was at the truck when I heard the noise and wondered what it was from and heard the watchman, so I want to know what it was. The next I heard, hear locomotive whistle, bell ring. Then I stoop, pick up another piece of ice, put it in. When I looked I saw things fly in the air which was this particular woman. She landed about forty feet from where she was hit.

Q. When did you first observe the woman—when did you first see the woman before she was hit?

A. She was standing on the track when I saw her.

Q. What did you say the watchmen were doing?

A. They were motioning for her to go back.

Q. Which watchman was motioning for her to go back?

A. As much as I could see, both of them were motioning her to move, go back. One was motioning to go one way, the other fellow was motioning from the other side to go - -

Q. Where were these watchmen stationed?

A. One was from Clark Avenue side.

Q. That would be the south side.

A. - - and one was from the other side, from north side.

Q. Which way was the north side watchman motioning her?

A. North side watchman was motioning her to go the other way from his side.

Q. You mean to go back to the south side?

A. Go back to the south side.

Q. Which way was the south side watchman motioning?

A. He was motioning to her to move to the north side.

* * *

Q. Did you see this woman when she first started to cross the track?

A. No

Q. The first time you saw her, was when she was - - when you saw the watchman on each side-

A. Yes

Q. - - motioning in different directions?"

In passing upon the question of whether or not the plaintiff was legally prejudiced by granting the defendant's motion for a directed verdict, we must construe the evidence most strongly in favor of the plaintiff. **Hamden Lodge v. Ohio Fuel Gas Co. 127 Oh St 469; 189 N. E. 146.** If, when considering the evidence in that light, reasonable minds could come to but one conclusion, which is adverse to the plaintiff's claims, it is the duty of the court to direct a verdict for the defendant. **39 O. Jur. 794.**

It is a well recognized rule in this State that when a person is travelling along a highway, approaching a railroad grade crossing, it is his duty to look and listen for the approach of trains before going upon or over the tracks and one who goes upon a track without looking or listening and is injured by an approaching train, which, in the exercise of ordinary care he could and should have seen in time to avoid injury, is guilty of contributory negligence as a matter of law.

**Detroit T. & I. R. R. Co. v. Rohrs, 114 Oh St 493, 151 N. E. 714; N. Y. C. & St. L. R. R. Co. v. Kistner, 66 Oh St 326; Penna. R. R. v. Rusznik, 117 Oh St 530, 159 N. E. 826;** Kallmerton v. Cowen, 111 F. 297 (C. C. A. Ohio 1901).

When, however, the railroad company attempts to guard the crossing with gates or flasher signals or flagman, and one is lead to go upon the tracks because the gates are up, or a signal is given to proceed, the rule is somewhat modified.

It was held in the case of Erie Railroad Co. v. Schultz, 183 F. 673 (C. C. A. Ohio 1911) that a man driving a loaded wagon about to cross several parallel railroad tracks at a crossing where safety gates are located and in operation, and who has waited before a closed gate until a passing train has gone by, and for whom the gate has been lifted so that he may cross, does not still continue under the same absolute duty to look and listen as soon and as far as physical obstacles permit, which he would have borne if the crossing had been unguarded; but he discharges his legal duty if, under those

circumstances, he uses his senses of sight and hearing for his own protection as soon as and as far as a man of ordinary prudence would do under similar circumstances.

In the case of **Eastern Motor Dispatch Inc. v. Penna. R. R. 82 Oh Ap 428,** the Court had for consideration a case where the defendant employed a watchman at one of its grade crossings, who, as the plaintiff's driver approached the crossing, waved both a white and a red light or lantern. The driver thinking the lights constituted a signal to cross the intersection, proceeded and a collision took place. The court held:

"1. The driver of a motor vehicle, in crossing railroad tracks outside a municipality, is chargeable with the duty to look and listen for approaching trains and to do it at a time and place and in a manner to make the looking and listening effective.

2. Where a defendant railroad employed a watchman at a crossing, whose duty it was to warn persons of approaching trains, whether the driver of a motor vehicle in crossing the tracks exercised ordinary care must be determined in view of the conduct of the watchman.

3. Where a watchman at a railroad crossing waved both the red and white lights, a factual situation was presented which should have been submitted to the jury in determining whether the signal given to the driver of the motor vehicle was a warning to stop or an invitation to cross and whether the driver exercised ordinary care in crossing the tracks, and it was reversible error to direct a verdict for the defendant."

In the case of Farley v. Norfolk & W. R. R. Co. 14 F. (2nd) 93 C. C. A. (4th Circuit) W. Va. (1926) there was for consideration the effect or inference to be drawn where a crossing watchman stood beyond the point of danger from which the plaintiff, a pedestrian, was attempting to cross over the tracks of the defendant.

There were four railroad tracks intersecting Fifteenth Street in Kenova, W. Va. Two of the tracks, one the main trunk and the other a passing track, belonged to the Chesapeake & Ohio R. R. Co. About 80 feet north of the Chesapeake & Ohio tracks were two tracks of the defendant. A watchman was employed to guard the crossing and was employed by both companies for that purpose. A passenger train was passing on the Chesapeake & Ohio main track and the watchman stood about fifteen feet north of the Chesapeake & Ohio main track with his "stop" sign in hand. The plaintiff's decedent, a pedestrian, assumed that the position of the watchman indicated that the intersection was safe to the point where he was standing and started to walk over de-

fendant's tracks when he was hit and killed by defendant's train backing over the intersection.

The Court, at page 95 of the opinion, said:

"The evidence is that a crossing watchman was provided at the crossing. This watchman was standing, not on the north side of the city track, to stop traffic from crossing that track in front of the backing cars, but 50 feet south of the belt line track, and was holding up his stop signal, and was stopping traffic at that point. This action on the part of the watchman was a notice to persons using the street that the point of danger was the place where he had taken his stand and raised the signal. It was a warning to go no further, but an implied assurance of safety in going that far. Persons using the street had the right to assume that they might proceed in safety to the point where the warning signal was displayed. When thus viewed, and we must view the evidence in the light most favorable to plaintiff on a motion to direct a verdict, the evidence showed more than a mere absence of the watchman from the place of danger at the time the cars were being backed; it showed an implied assurance on the part of the watchman that it was safe to proceed over the crossing to the point where he had raised his warning signal. Under these circumstances, it was for the jury to determine, after due consideration of all the evidence, whether the deceased exercised that reasonable care which the law requires. Casdorph v. Hines, 89 W. Va. 448, 109 S. E. 774; Hodgin v. Southern R. Co. 143 N. C. 93, 55 S. E. 413; 10 Ann. Cas. 417; McNamara v. Chicago etc. R. R. Co. 126 Mo. App. 152, 103 S. W. 1093; Fusili v. Missouri Pac. R. R. Co. 45 Mo. App. 535; 33 CYC 1126, 1127; Notes 10 Anno. Cases, 418 and 13 Anno. Cases 854, and cases cited."

The case of Hines v. Smith, 270 Fed. 132 (C. C. A. Ohio 1921) involved the driver of an automobile who was attempting to cross the tracks of the Erie Railroad Company at Niles, Ohio. At page 138 of the opinion the Court said:

"The evidence is uncontradicted that the defendant had maintained gates at this crossing for some time prior to the accident, and that at the time Dr. Smith drove upon the crossing the gateman was in full view and the gates were open. While this fact did not relieve the traveler from exercising ordinary and reasonable care for his own safety, yet it does materially affect the question of contributory negligence. Thompson on Negligence, Sec. 1613. In the case of Blount v. Grand Trunk R. R. 61 Fed. 375, 9 C. C. A. 526 (C. C. A. 6) it is said in the opinion:

" 'It is undoubtedly true that the failure to lower the gates

modifies the otherwise imperative duty of travelers, when they reach a railway crossing, to look and listen, and the presence of such a fact in the case generally makes the question of contributory negligence one for the jury, when otherwise the court would be required to give a peremptory instruction for the defendant.' Citing Burns v. Rolling Mill Co. 65 Wis. 312, 315, 27 N. W. 43; Stapley v. Railway Co. L. R. 1 Exch. 21; Glushing v. Sharp, 96 N. Y. 676; Cleveland C C & I R. R. v. Schneider 45 Oh St 678, 17 N. E. 321.

"It is also said in the opinion in the Blount case supra that:

" 'The fact is much more important where the traveler is driving a horse and vehicle than where he is walking because in the former case his attention is necessarily divided between the control of the horse and observation of the track, and his reliance upon the gates and the flagman must, in the nature of things, be greater than in the case of a pedestrian.'

"In the case of Erie R. R. Co. v. Schultz, 183 Fed. 673, 106 C C A 23 (C. C. A. 6) it is said:

" 'In this court it has been distinctly recognized that the opened gate is in the nature of an invitation to cross, and that the presence of such fact in the case generally makes the question of contributory negligence one for the jury, and that the same degree of watchfulness cannot be expected from the driver of a loaded wagon as from a pedestrian.' "

In the case of Blount v. Grand Trunk R. R. cited in the Smith case, supra, a pedestrian was killed while attempting to walk across the defendant's tracks in Detroit, the crossing gates maintained by defendant not having been lowered at the time. The court held that because the deceased was a pedestrian he should have been able to avoid collision with the train and was guilty of contributory negligence as a matter of law. The headnote provides as follows:

"Contributory Negligence—Gates Up at Crossing Question for Court: The question whether a pedestrian was guilty of contributory negligence in not looking and listening at a railroad crossing for an approaching train, where the gates had not been lowered, is not a question for the jury, where the evidence leaves no doubt that, if such pedestrian had made any use of his senses, he could have both seen and heard, in due season, an approaching train, and thereby have avoided the accident which resulted in his death."

The facts in this case were that the train was visible for a considerable distance even though it was in the night season and at page 379, Judge Taft said:

"It was a quiet night. There was no confusion at the

crossing. There were no other trains in sight. There was nothing to distract Blount's attention from the oncoming train except a self-absorption which in approaching a railway crossing is gross negligence. On these facts can reasonable men fairly reach any other conclusion than that Blount was wanting in due care in not observing his danger?"

This case is therefore distinguishable from the case now under consideration because of the fact that defendant's watchman invited the decedent into a place of immediate danger and the conduct of the watchman thereafter, together with other circumstances, created great confusion which the jury could find would affect the ability of the decedent to protect herself.

See also: Phila. R. R. v. LeBarr, 265 F. 129 (C. C. A. Pa. 1920); Johnson v. Dir. Gen'l of R. R. 123 A. 484, 278 P. 491 (1924); Norfolk & W. R. R. v. Burton, 169 S. E. 560, 160 Va. 633 (1933); Missouri Pac. R. R. v. Wat, 52 S. W. (2d) 634; Pittsburgh C. C. & St. L. R. R.. v. Staats, 149 N. E. 912.

The third, fourth and fifth paragraphs of the syllabus in the last cited case provide as follows:

"3. In action against railroad for death at crossing, based on alleged negligence of flagman in signaling decedent to cross, plaintiff was not required to allege any facts showing excuse on part of decedent for failing to observe approach of train.

"4. Signal given by watchman at railroad crossing, directing traveler on highway to cross, is an affirmative assurance that there is no danger, and one acting under such assurance is not required to exercise high degree of diligence that would otherwise be required.

"5. Fact that railroad placed and maintained flagman at crossing at which plaintiff's decedent was killed, is a positive recognition that crossing was an unusually dangerous one and that service of flagman at that point was reasonably necessary to protect persons using such crossing."

From the foregoing authority, and under all of these circumstances, presented in this case, where a lady of 68 years of age, who in the first instance, was directed into a place of danger by the defendant's crossing watchman whose job it was to advise street users of the danger of approaching trains, the question of whether she was guilty of contributory negligence because had she made timely observation to the west as she walked over the defendant's tracks she could have seen the approaching train, is under the circumstances just referred to, a jury question, and to direct a verdict for the defendant under such circumstances constituted prejudicial error.

The action is reversed for error of law in directing a verdict for the defendant and cause remanded for further proceedings according to law. Exc. Order see journal.

HURD, J, THOMPSON, J, concur.