# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SOUTHERN RAILWAY COMPANY v. ALDRIDGE'S ADM'R.

January 22, 1903.

Absent, Harrison, J.

1. RAILROADS—*Grade Crossing—Obstructions to Sight or Hearing—Duty of Traveller—Stop—Case at Bar.*—It is the duty of one about to cross a railroad to look and listen for approaching trains, and if the view is obstructed, or hearing is rendered difficult by reason of noises in the neighborhood, a higher degree of caution is required of both the traveller and the railroad company than if said obstructions and noises did not exist; the degree of caution required of both parties being in proportion to the danger caused by the obstruction and noise. But under the facts in this case it cannot be said that it was the duty of the traveller, as a matter of law, to stop in order to look and listen, if such duty exists in any case.

2. INSTRUCTIONS—*Partial View of Evidence.*—While a party is entitled to have his view of the evidence in a case stated hypothetically in an instruction to the jury, he has no right to call special attention to a part only of the evidence in the case and the facts it tends to prove, to the exclusion of other evidence in the cause. Such an instruction would be misleading.

3. INSTRUCTIONS—*Relevancy—Railroads—Grade Crossing—Gates—Watchman.*—Where a railroad company has been permitted by a city to temporarily substitute a watchman for gates at a grade crossing, and during that time an accident has occurred at such crossing, it is error to instruct the jury as to the duty imposed upon the company concerning the erection and maintainance of gates, and to omit all reference to the presence or absence of the watchman.

4. RAILROADS—*Grade Crossing—Negligence—Stop, Look, and Listen—Case at Bar.*—Viewed as upon a demurrer to the evidence, it is established in this case that the train which caused the accident

*o*

complained of approached a grade crossing in a city at a rate of speed prohibited by city ordinances. No notice was given of its approach. The headlight was extinguished, and the watchman at the crossing failed to perform his duty. The deceased was passing along a much-frequented street, approaching a crossing where, under the city ordinance, there should have been a watchman to warn him, and there was no train due at the time.

*Held:* The railroad company was guilty. of negligence, and although the accident might not have happened, if the deceased had stopped or paused, still the failure of deceased to stop, did not, as a matter of law, make a case of contributory negligence so plain as to justify the court in withdrawing it from the consideration of the jury.

Error to a judgment of the Corporation Court of the city of Danville rendered October 17, 1901, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

Instruction No. 5, as asked by the plaintiff in error, is set out in the opinion of the court. As given by the court, the instruction was as follows:

"The court instructs the jury that although they may believe from the evidence that an ordinance of the city of Danville required the defendant company to have gates at the north Main street crossing, where this accident happened, on January 24th, 1901, with a man in charge of the same, and to lower the said gates whenever a train was about to cross said street, and although they may believe from the evidence that the defendant company did not lower the gates when the train which struck the deceased, C. W. Aldridge, passed over the said street, and although they may believe that the defendant company failed to have a headlight at the front of the engine as it approached said crossing at the time of the accident, or to signal its approach by ringing a bell, sounding a whistle or otherwise, and although they may believe from the evidence that the train of the defen-

dant company at the time of the accident, was running at a greater rate of speed than is permitted by the ordinance of the city of Danville, and was thereby violating the ordinance of the said city, yet the said failures on the part of the defendant company did not relieve the said intestate, C. W. Aldridge, from exercising care and caution to avoid injury from the approaching train. And if on account of permanent obstructions at and about the crossing the said Aldridge could not see an approaching train as he approached the crossing, and by reason of noises at and near the said crossing he could not hear the noise and signals of an approaching train, then it was the duty of the said Aldridge and the said railroad company to use a higher degree of caution in approaching said crossing than if said obstructions and noise did not exist, and the degree of caution to be used by both parties should have been in proportion to the danger caused by the said obstruction and noise."

*Berkeley & Harrison,* for the plaintiff in error.

*Peatross & Harris* and *Cabell, Cabell & Cutler,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The administratrix of C. W. Aldridge brought suit in the Corporation Court of the city of Danville, alleging that the death of her intestate was due to negligence of the Southern Railway Company, and recovered a judgment for $8,500, to which the Southern Railway Company obtained a writ of error.

At the trial instructions were asked by the plaintiff and defendant. There was no exception taken to those given at the instance of the plaintiff, but it is assigned as error that instruction No. 5 asked for by plaintiff in error was amended, and that instruction No. 9 asked for by it was refused. It is also assigned as error that the court refused to set aside the verdict upon

motion of plaintiff in error as contrary to the law and the evidence.

Instruction No. 5, as tendered to the court, is as follows:

"The court instructs the jury that although they may believe from the evidence that an ordinance of the city of Danville, required the defendant company to have gates at the north Main street crossing, where this accident happened on January 24, 1901, with a man in charge of the same, and to lower the said gates whenever a train was about to cross said street, and although they may believe from the evidence that the defendant company did not lower the gates when the train which struck the deceased, C. W. Aldridge, passed over the said street; and although they may believe that the defendant company failed to have a headlight at the front of the engine as it approached said crossing at the time of the accident, or to signal its approach by ringing a bell, sounding a whistle, or otherwise, and although they may believe from the evidence that the train of the defendant company at the time of the accident was running at a greater rate of speed than is permitted by the ordinance of the city of Danville, and was thereby violating the ordinance of the said city, yet the said failures on the part of the defendant company did not relieve the said intestate, C. W. Aldridge, from exercising care and caution to avoid injury from the approaching train, that if, on account of permanent obstructions at and about the crossing, the said Aldridge could not see an approaching train as he approached the crossing, and, by reason of noises at and near the said crossing, he could not hear the noise and signals of an approaching train, then it was the duty of the said Aldridge to stop before going upon the said crossing, or to use such other means in his power to satisfy himself that no train was near at hand before going upon the said track and crossing, and if the jury believe from the evidence that the said Aldridge could not see and could not hear the ap-

proaching train as he approached the crossing, and knowing this, he still did not stop, or take any other means, or do anything else to find out whether the train was approaching or not, but drove right along upon the crossing and track, then the said Aldridge was guilty of such contributory negligence as precludes any recovery in this case, and the jury must therefore find for the defendant company."

This court has never decided that as matter of law it was the duty of a person approaching the crossing of a railroad to *stop,* look, and listen for an approaching train. It has been said in numerous cases that the railroad track itself was a signal of danger, and imposed upon one approaching it the duty to look and listen, but it has in no case been held that it was his duty to *stop* in order to look and listen, or that it was his duty when in a vehicle to get out in order to look and listen. On the other hand, it has been said that the degree of care and caution to be exercised depended upon the facts and circumstances of the particular case, and we have had no occasion to say that in no case would a traveller be required to *stop* in order to look and listen. It is not denied that instruction No. 5, as given by the court, propounds a correct proposition of law. The contention is that, as offered, it not only states the law correctly, but that it was proper and should have been given, looking to the facts of the case under consideration. If the instruction had stated all the facts, it would then have required us to say whether it was the duty of the defendant in error to *stop* in order to look and listen, but the instruction omits a view of the evidence which we deem essential to the case. An ordinance of the city had required the railroad company to erect gates at the crossing where the accident happened, which were to be in charge of a man whose duty it should be to lower them upon the approach of a train, but these gates had been temporarily discontinued with the assent of the city, and in lieu of the gates the railroad company was required to have a watchman constantly present

to give timely warning to passengers along the street of an approaching train.    The instruction as offered refers to the duty imposed upon the railroad company to erect gates, and to have them lowered at the proper time, but omits any reference to the fact that, for reasons which need not be specifically mentioned, the gates had been temporarily discontinued, and a watchman substituted in their stead.· As to what occurred with respect to this watchman, what he did, and what he omitted to do upon the occasion when Aldridge met his death is the subject of conflicting evidence, and plaintiff in error was entitled to have its view of what was proved by the evidence upon this point submitted to the jury upon a proper instruction, but it could not have an instruction given which directs the jury upon a hypothetical statement of the facts to find a verdict in its favor when it omitted in its recital of the facts any reference whatever to the presence or absence of the watchman.    Aldridge, it was shown, was perfectly familiar with this crossing; with its physical environment, and with all the facts connected with it, and he may very properly have been influenced in the course of conduct which led to his death by the absence of the watchman, whose duty it was to inform him of his peril.    Knowing that it was the duty of the watchman to be present to keep a lookout for trains, and to warn those interested of their approach, he was or may have been lulled into a false sense of security, and been thereby placed in a worse position than if no precaution had been taken for his safety.    He may, indeed, have been betrayed by the omission on the part of the watchman to perform the duty which the railway company had imposed upon him in obedience to an ordinance of the city enacted for his protection.

It has been held by this court that an instruction is misleading, and should not be given, which calls special attention to a part only of the evidence and the facts it tends to prove, and leaves out of view other evidence in the cause.    *N. & W. Rwy.*

*Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54; *Boush* v. *Fidelity Deposit Co., &c.,* 100 Va. 735, 42 S. E. 877.

There was no error, therefore, in rejecting instruction No. 5 as offered to the court, or in giving it as amended by it.

Instruction No. 9, as offered by plaintiff in error, is in the following words: "If the jury believe from the evidence that Aldridge was familiar with that locality and knew that the crossing was there and trains liable to pass at any time, and that the bluff and buildings obstructed his view and made hearing difficult, and believe farther that he was driving in a vehicle over a street paved with rock, at night, whereby the sound of the horse's hoofs and the rattle of the vehicle over the rocks lessened his ability to hear, and knew also of the noise from the mills and water flowing over the dam, and notwithstanding drove on without stopping to look or listen, down the hill so fast that he could not avoid being struck, the court instructs the jury that he contributed to his own hurt, and they must find for the defendant, even though they believe the defendant's train was moving too fast, and the usual and proper signals were not given."

This instruction was properly rejected for the reasons which we have already stated in considering instruction No. 5.

The only other assignment of error is to the ruling of the court upon the motion to set aside the verdict as contrary to the law and the evidence, and in considering this assignment it is scarcely necessary to say it is before us as upon a demurrer to the evidence. Looked at in the light of that rule, there can be no doubt that the plaintiff in error was guilty of negligence. The facts which we must consider as established by the evidence are that the train which caused the accident approached a crossing at a speed prohibited by an ordinance of the city, and which, if there had been no ordinance upon the subject, would have warranted the jury in fixing negligence upon the railroad company when we consider that its track crossed a public street at

· grade, and that it gave no notice of its approach in any way; that its headlight was extinguished, and that its watchman, who was placed at the crossing to give warning of approaching trains, failed in the performance of his duty. We are aware, of course, that the evidence with respect to many of these facts is strongly controverted. It may be conceded that the weight of evidence is with the plaintiff in error as to some of them, but that avails nothing under the rule governing demurrers to evidence. The most serious controversy, for instance, is as to the position of the watchman at the time of the accident. If his account be true, and it is corroborated in a large degree by disinterested witnesses, he performed his duty fully and faithfully, and did all in his power to save the unfortunate victim from the consequences of his own termerity; but if the testimony of at least two witnesses on behalf of defendant in error be true, then the watchman was derelict in the performance of his duty, and his negligence is, of course, to be imputed to plaintiff in error.

The evidence being plainly sufficient, considered as we must consider it under the law governing such cases, it only remains for us to enquire whether or not the contributory negligence of Aldridge constituted a bar to his recovery.

Do the facts so plainly disclose the negligence of Aldridge as that reasonable men should not differ in their judgment upon it? He was passing along a much-frequented street. He was approaching a crossing where, under the ordinance of the city, there should have been a watchman to warn him of his danger. There was no train due at the time, and it was all the more incumbent upon the railroad company to herald the approach of a train not running upon its scheduled time. It is true that if he had stopped or paused the accident might not have occurred, but we do not feel warranted in saying that, as matter of law, his failure to stop made a case of contributory negligence so plain as to justify the court in withdrawing it from the consideration of the jury. *Kimball & Fink* v. *Friend's Adm'r.*, 95

Va. 125, 27 S. E. 901; *Marshall's Adm'r.* v. *Railroad,* 99 Va. 798, 34 S. E. 455.

We are of opinion that there is no error in the judgment of the Corporation Court, and it must be affirmed.

*Affirmed.*