# Richmond

SOUTHERN RAILWAY COMPANY v. LEWIS S. CAMPBELL.

February 20, 1939.

Record No. 2031.

Present, All the Justices.

The opinion states the case.

*Thomas B. Gay, W. M. Tuck* and *G. E. Mitchell, Jr.,* for the plaintiff in error.

*B. B. Campbell* and *James S. Easley,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The Southern Railway Company is not satisfied with a verdict sanctioned by the trial court through which liability against it was established in favor of Lewis S. Campbell who was the plaintiff in the court below. The action arose out of a collision between a train of the railway company and a truck owned by Campbell and operated by Walter Dale under the owner's personal direction and in his presence.

The Southern Railway Company maintains a single track through the town of South Boston. It is crossed at grade at right angles by Main street which is also State Highway number 501. The highway or street runs approximately north and south, while the railway track runs in an easterly-westerly direction from Richmond to Danville. A freight train of some fifty cars going in the direction of Danville was stopped a considerable distance from the crossing between three and four o'clock in the morning of October 31, 1937. The train had been stopped in order that certain switching operations could be effectuated. The engine with four cars behind it proceeded to connect with a cattle car which was standing on the siding. After this connection was made the engine with the cattle car in front and four cars behind was directed back to the main line and then across the highway in a forward movement. In one of

the switching movements a switch had been "fouled" necessitating backing over the crossing. In this backing operation a box car collided with the truck of Campbell causing the damages which were sought and recovered in this action.

The view at the crossing for one going in the direction in which Campbell and his driver and helper, Walter Dale, were traveling was obscured when looking to the right by a freight depot, a mound of earth and two box cars which were then on two switches parallel with the main line but which did not extend over the crossing. These obstructions prevented Campbell from obtaining a clear view of the track for trains approaching from the right until the front of the truck was quite near the rails.

According to the evidence for the plaintiff, the warning gong with the red light in its center, commonly known as the automatic signal, was flashing when the engine and the five cars moved forward over the crossing. However, after advancing beyond the crossing the gong and red light ceased to give warning. Campbell, thinking that the train had passed on, cautiously and slowly approached the crossing after having lowered the window and listened and looked. He then directed his driver, Dale, to proceed. They drove slowly on the crossing in low gear and the truck was struck on its right side by the backward movement of the train which was also moving slowly. There were no lights on the car which struck the truck and the headlight of the engine was shining in the opposite direction, four car lengths away.

The automatic signal which a short time before had ceased to operate according to the plaintiff, began to function again immediately before or at the time of the impact. The testimony of the plaintiff and his driver, which we must accept as true under elementary principles, discloses that when they stopped or practically stopped and looked and listened some thirty feet from the crossing, there was no warning given them of any description of the proximity of the train or that it would return in a backward movement over the crossing which it had just proceeded across in a forward movement.

Counsel for the Southern Railway Company rest their position for a reversal of the judgment upon two fundamental points. First, they announce that no negligence has been established against the railway company, and, secondly, they maintain that Campbell was shown to have been guilty of contributory negligence which bars any recovery. Objections and exceptions were made and taken to some of the instructions.

At the outset it will be noted that the crossing here is in an incorporated town where no ordinance had been enacted under the provisions of Code, section 3958, making it necessary to ring the bell and to blow the whistle. But even in the absence of requirements of the statute or of an ordinance to sound the whistle and to ring the bell, the railway company was still bound under the common law to give a reasonable warning to travelers on the highway of the approach of its trains to the crossing.

In *Davis* v. *McCall,* 133 Va. 487, 113 S. E. 835, 840, we said, "As the crossing was in an incorporated town there was no statute requiring any such signal to be given, and no ordinance requiring any such signal to be given was offered in evidence, but there remained the common law duty to give due warning of the approach of the train to the crossing."

If the servants of a railway company fail to give appropriate warning of the approach of trains and a traveler is injured at a crossing as the proximate result of such failure, the railway company is guilty of actionable negligence unless the injured traveler has precluded his recovery by his contributory negligence. Of course, where there has been a failure on the part of the railway company to give the signals required by the statute or an ordinance adopted in pursuance thereof by a city or town, then the contributory negligence of the traveler in going on the crossing and suffering injury is not a bar to his recovery but may be urged in mitigation of his damages.

In the case under consideration the evidence adduced for the plaintiff and which was evidently accepted by the

jury discloses that the common-law duty of the Southern Railway to warn the plaintiff of the proximity of the backing train was not performed. It was therefore negligent.

Counsel for the railway company very strenuously assert that the evidence of Campbell and his driver, Dale, is incredible and unworthy of belief. We have carefully considered this contention and find that it is without merit.

Having reached the conclusion that the Southern Railway Company was negligent, our remaining inquiry necessarily is whether Campbell was himself negligent in going on the crossing under the attendant circumstances. It is strongly urged by counsel for the railway company that he was guilty of contributory negligence as a conclusion of law and that the question should not have been submitted to the jury. Thus, we are again confronted with the old and familiar question, when is negligence a matter of law for the court or a question of fact for the jury.

In *Davis* v. *McCall, supra; Kimball & Fink* v. *Friend's Adm'r*, 95 Va. 125, 27 S. E. 901, and *Southern Railway Co.* v. *Aldridge's Adm'r*, 101 Va. 142, 43 S. E. 333, the general rule has been announced that whether one crossing a railroad at grade is required to *stop* before going thereon, is a question for the jury under proper instructions. But, on the other hand, it is equally well established that one who goes on a crossing without looking and listening and is injured, cannot recover because he is guilty of contributory negligence as a matter of law. *Washington & Old Dominion Railway Co.* v. *Zell's Adm'r*, 118 Va. 755, 88 S. E. 309, illustrates this rule which is well stated in the second headnote. It follows: "At grade crossings of railroads the rights of a traveler on the highway and of the railroad company are 'mutual, reciprocal and co-extensive,' but generally a moving train is accorded the right of way. A traveler approaching such crossing for the purpose of crossing must always exercise care proportioned to the known danger, and this care must be such as one who knows the danger and of the prior right of passage would be expected to exercise. The duty of look-

ing and listening for approaching trains must be discharged in such manner as will make the looking and listening effective. The greater the danger, the greater the measure of duty. The track itself is a proclamation of danger, and the traveler has no right to proceed across the track without such looking and listening for approaching trains, and if he does, and in consequence thereof is injured, there can be no recovery, although the railroad company may also be guilty of negligence proximately contributing to such injury."

In the very recent case of *Virginian Railway Company* v. *Rodgers,* 170 Va. 581, 197 S. E. 476, 478, Justice Eggleston speaking for the court reiterates the latter rule: "This court has many times said that a person approaching a railroad track must look where looking is effectual. *Washington & Old Dominion Ry. Co.* v. *Zell's Adm'r,* 118 Va. 755, 760, 88 S. E. 309; *United States Spruce Lumber Co.* v. *Shumate,* 118 Va. 471, 475, 87 S. E. 723; *Cashell* v. *Southern Ry. Co.,* 152 Va. 335, 342, 147 S. E. 209; *Norfolk & Western Ry. Co.* v. *Eley,* 157 Va. 568, 574, 162 S. E. 3. He can not wait until his view is obstructed and say that it would have been useless for him to have looked then."

No pronouncement in the present case is intended to impinge upon or qualify those principles. If a traveler drives blindly upon a crossing whether his view is obstructed or unobstructed, takes no precautions for his safety and is injured, his negligence will preclude any recovery on his part. The present case, however, presents some rather unusual and superadded facts which remove it from the operation of the rule quoted from the *Washington & Old Dominion Railway Company Case, supra.* These facts are, (1) Campbell looked and listened for a train and had his driver practically bring the truck to a full stop some thirty feet from the track and seeing and hearing no train, he directed his driver to drive the truck cautiously in low gear on the crossing. The driver drove as he was ordered to do. (2) The warning automatic gong and the flashing red light signal which had been operating as the train pulled

across the crossing discontinued functicning after it passed. This was a single track and Campbell attempted to cross the track a very short time after the train had passed. (3) There were obstructions which prevented him from seeing the track from his right, the direction from which the train backed into his truck. (4) Campbell had observed that the train had passed over the crossing. He had noticed that the automatic warning device discontinued its operation. No watchman was there to warn him of the backward movement of the train. He thought he could safely negotiate the crossing.

These added facts in our opinion clearly make it proper for Campbell's conduct,—that is, whether negligent or not,—to be appraised by a jury and not by the court. His conduct on approaching the crossing under the surrounding conditions, measured by what a prudent man in the exercise of ordinary care would have done under like circumstances, was at least such as would cause fair-minded men to differ.

Judge Keith in *Southern Railway Co.* v. *Aldridge's Adm'r*, 101 Va. 142, at page 146, 43 S. E. 333, at page 334, said: "This court has never decided that as a matter of law it was the duty of a person approaching the crossing of a railroad to *stop*, look, and listen for an approaching train. It has been said in numerous cases that the railroad track itself was a signal of danger, and imposed upon one approaching it the duty to look and listen, but it has in no case been held that it was his duty to *stop* in order to look and listen, or that it was his duty when in a vehicle to get out in order to look and listen. On the other hand, it has been said that the degree of care and caution to be exercised depended upon the facts and circumstances of the particular case, and we have had no occasion to say that in no case would a traveller be required to *stop* in order to look and listen."

And on page 149, 43 S. E. on page 335, Judge Keith concluded: "Do the facts so plainly disclose the negligence of Aldridge that reasonable men should not differ in their

judgment upon it? He was passing along a much-frequented street. He was approaching a crossing where, under the ordinance of the city, there should have been a watchman to warn him of his danger. There was no train due at the time, and it was all the more incumbent upon the railroad company to herald the approach of a train not running upon its scheduled time. It is true that if he had stopped or paused the accident might not have occurred, but we do not feel warranted in saying that, as a matter of law, his failure to stop made a case of contributory negligence so plain as to justify the court in withdrawing it from the consideration of the jury. *Kimball & Fink* v. *Friend's Adm'r,* 95 Va. 125, 27 S. E. 901; *Marshall's Adm'r* v. *Valley Railroad Co.,* 99 Va. 798, 34 S. E. 455."

In *Kimball & Fink* v. *Friend's Adm'r, supra,* Friend was struck and killed by a train at a crossing where the view was somewhat obscured in the direction from which the train came. Judge Buchanan said whether Friend was negligent in going on the tracks was a question for the jury. He said: "It is true that he was bound to use reasonable care to avoid getting into a position in which he could not escape a collision. But the fact that he did get into such position is not conclusive evidence that he was there by his own negligence. He may have been there in consequence of the defendant's negligence, and because he was misled by it. Whether he used due care to ascertain if a train was approaching depended upon inferences from facts to be found by the jury. The manner in which he approached the track; the speed at which he was travelling; the obstructions to a view of the track on which the engine was approaching; the negligence of the defendants, as it affected the conduct of the deceased, whether that negligence consisted in the silence of the electric gong, the failure to ring the bell, sound the whistle, or give any warning of its approach, or in all combined, were among the facts to be found by the jury, and from which facts in connection with all the other circumstances and facts of the case the main fact of due care or negligence on the part of the

deceased was to be found. Upon all these facts and circumstances, after view of the grounds, the jury were of the opinion that it did not appear that the deceased was guilty of contributory negligence." (95 Va. 125, 27 S. E. 903.)

And in speaking of the fact that the gong was not ringing, this was said: "In this case the jury had the right to infer that the deceased had placed some reliance upon the fact that the electric gong failed to sound as the engine approached the crossing, and was thereby misled.

"The erection of gates, gongs, or other devices at highway or street crossings to warn travellers of approaching trains does not excuse a traveller at such crossings from exercising ordinary care and caution. And while courts and text-writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveller to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him, as if there was no such invitation. 3 Elliott on Railroads, sec. 1157; 2 Wood on Railways, (Ed. 1885), p. 1328; (Id. Ed. 1894), p. 1532; *Directors, &c., North East Railway* v. *Wanless,* 7 Eng. & Irish Appeal Cases (House of Lords), 12; *Palmer* v. *New York Central, etc., R. Co.,* 112 N. Y. 234, 241, 19 N. E. 678; *Tobias* v. *Michigan Cent. R. Co.* (103 Mich. 330), 61 N. W. 514; *Glushing* v. *Sharp,* 96 N. Y. 676; *Cleveland, etc., R. Co.* v. *Schneider* (45 Ohio St. 678), 17 N. E. 321; *Pennsylvania Co.* v. *Stegmeier* (118 Ind. 305), 20 N. E. 843 (10 Am. St. Rep. 136) ; *Conaty* v. *New York, etc., R. Co.* (164 Mass. 572), 42 N. E. 103; Beach on Contributory Negligence (2d Ed.), sec. 190.

"The question of negligence in such a case is peculiarly one for the consideration of the jury."

Where a railroad company maintains automatic warning devices at a crossing the public generally has the right to presume that these safeguards will be maintained in a reasonably good condition. A silent gong amounts to an implied invitation to a traveler that it is safe to negotiate the crossing. The extent to which he may rely on the

assurance is generally a question of fact and while ordinarily the same degree of care and vigilance is not required where a warning signal is maintained, he has no right to rely entirely upon the failure of a gong to sound. He is still bound to use the reasonable precaution that an ordinarily prudent man would use under similar conditions. The fact that a gong is silent and that no watchman is guarding the crossing is merely to be considered in determining whether the traveler has exercised the degree of care required in attempting to negotiate the crossing. If his view is obstructed and he exercises a reasonable degree of caution, drives slowly, looks and listens for trains but sees none, proceeds in a cautious manner over the tracks and is injured, the question of whether he was negligent under all of the circumstances must be for the jury. *Kimball & Fink* v. *Friend's Adm'r, supra; Norfolk & W. Ry. Co.* v. *Wilkes' Adm'r,* 137 Va. 302, 119 S. E. 122; *Norfolk & W. Ry. Co.* v. *Benton,* 160 Va. 633, 169 S. E. 560.

 In the present case the fact that the train had just passed over the crossing which consisted of one track, in our opinion, gave Campbell some assurance that it would not return almost immediately and collide with his truck. This fact, of course, did not excuse Campbell from exercising the reasonable care required of him. Going upon a crossing under such or like circumstances is not negligence as a matter of law.

In *Wilmouth's Adm'r* v. *Southern Ry. Co.,* 125 Va. 511, 99 S. E. 665, 668, this is said: "There are exceptions to the general rule of negligence *per se* just referred to, which exist, as stated by the authorities, 'when the circumstances are so unusual that the injured party could not reasonably have expected the approach of the train at the time he went upon the track.' *Scott* v. *St. Louis, etc., R. Co.,* 79 Ark. 137, 95 S. W. 490, 116 Am. St. Rep. 67, 9 Ann. Cas. 212, 214, and note pages 216, 217. When such circumstances exist, the failure to look is not regarded as contributory negligence *per se,* and the case is held to be one for the jury on that issue."

There are other cases in which we have held that reasonable belief that no train is approaching a crossing relieves the traveler who fails to look and listen of the imputation of negligence as a matter of law; such as where a warning gong is silent, or where one train follows another so closely as to mislead or confuse the traveler. *Boyd* v. *Southern Ry. Co.*, 115 Va. 11, 78 S. E. 548, Ann. Cas. 1914D, 1017; *Southern Ry. Co.* v. *Aldridge's Adm'r*, 101 Va. 142, 43 S. E. 333; *Chapman's Adm'r* v. *Hines*, 134 Va. 274, 115 S. E. 373.

Cases in which it has been held that the presence or absence of contributory negligence on the part of a traveler was for the jury are, *Perkins* v. *Atlantic Coast Line R. R.*, 133 Va. 242, 112 S. E. 839; *Payne* v. *Brown*, 133 Va. 222, 112 S. E. 833; *C. & O. Ry. Co.* v. *Gayle*, 132 Va. 433, 112 S. E. 785; *Massey's Adm'x* v. *Southern Ry. Co.*, 106 Va. 515, 56 S. E. 275.

Where a traveler's view of a crossing is obstructed and he cautiously approaches it and is injured, the Supreme Court of the United States has recently held that his negligence, if any, is for the jury.

In *Pokora* v. *Wabash Ry. Co.*, 292 U. S. 98, 54 S. Ct. 580, 581, 78 L. Ed. 1149, 91 A. L. R. 1049, Justice Cardozo in delivering the opinion commented on the conduct of the truck driver in going on the tracks and held that his negligence, if he were guilty of any, was for the jury. He used this language: "In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, unaided by that of sight. No doubt it was his duty to look along the track from his seat, if looking would avail to warn him of the danger. This does not mean, however, that if vision was cut off by obstacles, there was negligence in going on, any more than there would have been in trusting to his ears if vision had been cut off by the darkness of the night. Cf. *Norfolk & W. Ry. Co.* v. *Holbrook* (C. C. A. 6th) 27 F. (2d) 326. Pokora made his crossing in the daytime, but like the traveler by night he used the faculties

available to one in his position. *Johnson* v. *Seaboard Air Line R. Co.,* 163 N. C. 431, 79 S. E. 690, Ann. Cas. 1915B, 598 [4 N. C. C. A. 627]; *Parsons* v. *Syracuse, B. & N. Y. R. Co.,* 205 N. Y. 226, 228, 98 N. E. 331. A jury, but not the court, might say that with faculties thus limited, he should have found some other means of assuring himself of safety before venturing to cross. The crossing was a frequented highway in a populous city. Behind him was a line of other cars, making ready to follow him. To some extent, at least, there was assurance in the thought that the defendant would not run its train at such a time and place without sounding bell or whistle. *Louisville & N. R. Co.* v. *Summers* (C. C. A. 6th), 125 F. 719, 721; Smith-Hurd Rev. St., ch. 114, sec. 59; Illinois Rev. St. (1933 Ed.), ch. 114, par. 84. * * * ."

Justice Cardozo distinguished the *Pokora Case* from the case of *Baltimore & Ohio R. Co.* v. *Goodman,* 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, in which latter case Justice Holmes in delivering the opinion had said that one driving upon a crossing where the view was partly obstructed and was injured could not recover as a matter of law because his negligence would be the cause of his injury. He said: "In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look." Justice Cardozo in the *Pokora Case* disapproved the quoted language used in the *Goodman Case* and stated that the remark was unnecessary to a decision of the case and that it had been a fertile source of controversy. He concluded that, "The opinion in *Goodman's Case* has been a source of confusion in the federal courts to the extent that it imposes a standard for application by the judge and has only wavering support in the courts of the states."

See annotations in 56 A. L. R. 647 and 91 A. L. R. 1055.

Our conclusion is that the conduct of Campbell in approaching the crossing under all of the circumstances then

present was such that required a jury to say whether it was negligent or not.

The position we have taken in this case renders it unnecessary for us to discuss the instructions. The objections and exceptions to them have been substantially answered by what has already been said.

We are of opinion that the judgment should be affirmed.

*Affirmed.*