Present:  All the Justices

RGR, LLC

                                        OPINION BY
v.   Record No. 130633          CHIEF JUSTICE CYNTHIA D. KINSER
                                        JUNE 5, 2014
GEORGIA SETTLE, PERSONAL
 REPRESENTATIVE OF THE ESTATE
 OF CHARLES E. SETTLE, SR., DECEASED

            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                     Mary Grace O'Brien, Judge

        In this wrongful death action arising out of a collision at

a private railroad crossing, we conclude that the decedent,

Charles E. Settle, Sr. (Settle), was contributorily negligent as

a matter of law because he failed to act as a reasonable person

would have acted for his own safety under the particular

circumstances of this case.  Therefore, we will reverse the

circuit court's judgment upholding a jury verdict in favor of

the plaintiff.

                        FACTS AND PROCEEDINGS

        In October 2004, Settle was fatally injured when a train

owned and operated by Norfolk Southern Corporation (Norfolk

Southern) struck the dump truck he was operating.  At the time

of the collision, Settle was traveling on Kapp Valley Way, a

private road that crosses railroad tracks owned by Norfolk

Southern.[1]  Because the railroad crossing was private, it was

_____

        [1] The scene of the accident is shown in the photograph
appended to this opinion.

controlled with only "crossbuck signs."  There were no stop signs, warning signals, or barriers.

Adjacent to the railroad tracks, the defendant, RGR, LLC, (RGR) operated a business offloading lumber from train cars and reloading it onto tractor-trailers.  On the date of the accident, RGR had lumber stacked near the railroad tracks and seven feet inside Norfolk Southern's 30-foot right-of-way.  The edge of the lumber stacks was 23 feet from the center of the tracks.  The collision occurred after Settle traveled past the lumber stacks and started to cross the railroad tracks.  The train hit the front side of Settle's truck.

Georgia Settle (Mrs. Settle), as personal representative of her deceased husband's estate, filed this wrongful death action seeking compensatory damages and named in her fourth amended complaint RGR, Norfolk Southern, and two other commercial business entities as defendants.  Mrs. Settle alleged that the defendants created a hazardous condition by stacking lumber near the railroad tracks, breached their duty of reasonable care to Settle by blocking the view of those traveling on Kapp Valley Way, and failed to take reasonable steps to make the railroad crossing safe.[2]  As a result, Settle, according to the

---

[2] Before trial, the claim against Norfolk Southern was settled, and the claims against the other two defendants were dismissed with prejudice.

2

allegations, could not see the approaching train in sufficient time to stop and avoid the collision.

At trial, the parties stipulated to certain facts. A third party owned Kapp Valley Way, and Norfolk Southern owned both the railroad tracks on which the accident occurred and a right-of-way that extended 30 feet in each direction from the center of the tracks. Norfolk Southern's trains came from both directions on the tracks that crossed Kapp Valley Way, and its trains did not come at the same time every day. The particular train that struck Settle's truck was traveling at approximately 45 miles per hour and was composed of three engines and more than 100 cars. Settle's dump truck was 30 feet in length and measured eight feet from its front end to the back of the interior of the cab. At the time of the accident, Settle's truck was loaded with 13.21 tons of gravel that he was delivering to a county sewer system pipeline construction site. Settle held a commercial driver's license (CDL) and was employed as a dump truck driver.

Settle was driving southbound on Kapp Valley Way (from left to right in the photograph) toward the railroad crossing. The train was traveling east (from bottom to top in the photograph),

The fourth amended complaint also included a claim for negligence per se and sought punitive damages. The circuit court sustained RGR's demurrer and dismissed the negligence per se claim and request for punitive damages without leave to amend.

3

approaching Settle from his right. RGR's lumber stacks were situated on the north side of the tracks at the corner where Kapp Valley Way crosses the railroad tracks. According to a representative from Norfolk Southern, the sightline at the point where Kapp Valley Way crosses the railroad tracks extended 800 feet to the west, the direction from which the train came that struck Settle's truck, and 600 feet to the east.

Receipts from Settle's deliveries on the day of the accident reflected that he was making his seventh trip to deliver gravel to the construction site when the collision occurred. One of Settle's co-employees, who had also driven over the crossing on Kapp Valley Way numerous times, testified, via deposition, that his usual practice was not to stop at the crossing but simply to slow down, check for a train, and proceed over the tracks if a train was not present. The employee stated that it was possible to stop before reaching the tracks if a train was approaching but that "you couldn't see like you should." According to the employee, if the lumber stacks were "out of the way, it would have been a whole lot better." But, the employee acknowledged that he had indeed stopped at the crossing in sufficient time to avoid being struck by a train coming from the west. He also stated that no one ever complained to RGR or Settle's employer about the lumber stacks'

4

obstructing the view of the railroad tracks from Kapp Valley Way.

Timothy Weston, the owner of a commercial truck repair company, testified for Mrs. Settle as an expert on the operation of the dump truck Settle was driving when he was fatally injured. According to Weston, a truck like Settle's, if fully loaded, will accelerate in first gear from a stationary position at the speed of one-to-two miles per hour. In second gear, the truck, according to Weston, will increase its speed to two-to-three miles per hour and will travel at five miles per hour in third gear. In this particular type of truck, shifting between gears requires the driver to "push the clutch in, put the truck in neutral, [and] push the clutch back in," timing it "with the engine speed [and] decreasing the rpm of the engine . . . when you go into gear." According to Weston, if the driver misses a gear, the truck is in neutral, and if fully loaded, will stop. Weston approximated that coming to a complete stop with a full load while traveling five miles per hour would require about ten feet.[3] Weston also testified that due to various noises inside the cab of the truck while driving, it is difficult to hear noises outside the cab.

---

[3] The parties agreed that five miles per hour equals 7.33 feet per second, and the circuit court took judicial notice that the average driver's "perception-reaction time" is 1.5 seconds.

Jose Mendosa was driving a box truck on the opposite side of the tracks, traveling northbound on Kapp Valley Way (from right to left in the photograph). Mendosa and his passenger, Luis Bonilla, testified that they saw the train approaching from the railroad crossing at Route 15, to their left, and stopped their truck at the crossing.[4] Mendosa and Bonilla both stated that they heard the train's horn once, before the train reached the Route 15 crossing, but denied that the train blew its horn again from the time it crossed Route 15 until it hit Settle's truck. Mendosa saw Settle's truck approaching the crossing and stated that Settle was traveling "very slowly," about five miles per hour. Mendosa and Bonilla both attempted to get Settle's attention by waving their arms at him as he neared the crossing, but neither could see Settle's face through his truck's windshield. Mendosa also testified that he had crossed the track on Kapp Valley Way several times that day and that "it was difficult to see because of the lumber piles."

Danny Humphreys owned a business on Kapp Valley Way and was driving a pick-up truck that stopped behind Mendosa and Bonilla at the crossing. Humphreys stated that he did not hear the train but that his windows were rolled up, he was on the

---

[4] The record does not reflect the distance between the railroad crossing at Route 15 and the Kapp Valley Way crossing. Testimony and several photographic exhibits, however, demonstrate that there is a curve in the track between Route 15 and the Kapp Valley Way crossing.

telephone, and his air-conditioning was running. Humphreys also had traveled on Kapp Valley Way many times the day of the accident and testified that, when approaching the crossing as Settle did, he could not see the tracks to the right because of the lumber stacks. According to Humphreys, one could only see whether a train was approaching "[w]hen you get to the edge of the lumber pile" and that "you would have to kind of look around the corner." In addition, because the Kapp Valley Way crossing was only one lane wide, a driver had to stop if other vehicles were present and take turns crossing the railroad tracks. In Humphreys' experience, most of the trains that crossed Kapp Valley Way came from the east heading west (from top to bottom in the photograph), i.e., in the opposite direction as the train that struck Settle's truck.

Michael White was employed by RGR and was working outside in the lumber yard when the accident occurred. Although White did not witness the accident, he testified that he heard the train's horn before it crossed Route 15 and then heard a screech and a bang from the accident perhaps 30 seconds later. Michael Lawson, White's supervisor, was also outside and likewise estimated that about 30 seconds elapsed between the time the train blew its horn and the accident occurred.

Roger Janney, the conductor of the Norfolk Southern train that struck Settle's truck, testified that the engineer blew the

7

train's horn and started slowing the train as it approached the Route 15 crossing. Janney said that as the train "came around the curve" after crossing Route 15 and approached the Kapp Valley Way crossing, he saw Settle's truck come into sight from behind a building. Janney next saw Settle as the front of his truck appeared from behind the lumber stacks. According to Janney, Settle was looking straight ahead. Janney could not estimate Settle's speed but stated that the truck was moving slowly. Thomas Street, the train's engineer, confirmed that he blew the train's horn before reaching Route 15, and both he and Janney testified that Street blew the horn again after crossing Route 15 in advance of the Kapp Valley Way crossing. Street stated that he saw Settle twice before his truck reached the crossing, that Settle was looking straight ahead when he entered the crossing, and that Settle was driving about two-to-four miles per hour.

Richard Young, testifying for RGR as an expert on drivers with a CDL, stated that such a driver would be required to stop at the crossing adjacent to the lumber stacks because the driver would not be able to see if a train was coming until he or she was within 15 feet of the tracks. Young conceded, however, that a driver would not be required to stop if, using ordinary care, the driver believed there was no train coming. Young also

8

agreed that "commercial drivers should not stop closer than 15 feet from the rail crossing."

At the close of Mrs. Settle's evidence and again at the close of all the evidence, RGR moved to strike. RGR argued, inter alia, that the evidence established that Settle was contributorily negligent as a matter of law because he never looked to see if a train was approaching and his failure to do so, not RGR's lumber stacks, was a proximate cause of the accident. The circuit court denied the motions to strike. The jury returned a verdict for Mrs. Settle in the amount of $2.5 million, along with pre-judgment interest. RGR filed a motion to set aside the verdict, again raising the issue of contributory negligence and requesting, in the alternative, a new trial or a remittitur of the verdict. After a hearing, the circuit court denied RGR's motions and entered a final order in accord with the jury's verdict. This appeal followed. The dispositive issue is whether Settle was contributorily negligent as a matter of law.

### ANALYSIS

"Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." Jenkins v. Pyles, 269 Va. 383, 388, 611 S.E.2d 404, 407 (2005); accord Sawyer v.

9

_Comerci_, 264 Va. 68, 74, 563 S.E.2d 748, 752 (2002); _Ponirakis v. Choi_, 262 Va. 119, 124, 546 S.E.2d 707, 710 (2001). The defendant has the burden to prove contributory negligence by "the greater weight of the evidence." _Sawyer_, 264 Va. at 75, 563 S.E.2d at 752. "[J]ust as a plaintiff is required to establish a prima facie case of negligence, a defendant who relies upon the defense of contributory negligence must establish a prima facie case of the plaintiff's contributory negligence." _Id._ at 75, 563 S.E.2d at 753. To do so, a defendant must show that the plaintiff was negligent and that such negligence was a proximate cause of the accident. _Rascher v. Friend_, 279 Va. 370, 375, 689 S.E.2d 661, 664-65 (2010). Ordinarily, these are questions of fact to be decided by the fact finder. _Jenkins_, 269 Va. at 388, 611 S.E.2d at 407. The issue becomes one of law "only when reasonable minds could not differ about what conclusion could be drawn from the evidence." _Id._ at 389, 611 S.E.2d at 407 (collecting cases).

Armed with a jury verdict approved by the circuit court, Mrs. Settle now occupies "the most favored position known to the law." _Bennett v. Sage Payment Solutions, Inc._, 282 Va. 49, 54, 710 S.E.2d 736, 739 (2011) (internal quotation marks omitted); _accord_ _Bitar v. Rahman_, 272 Va. 130, 137, 630 S.E.2d 319, 323 (2006); _Ravenwood Towers, Inc. v. Woodyard_, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992). Thus, she is entitled to have the

10

evidence and all inferences reasonably drawn from it viewed in the light most favorable to her.  Norfolk S. Ry. Co. v. Rogers, 270 Va. 468, 478, 621 S.E.2d 59, 65 (2005).  We will not set aside the circuit court's judgment unless it is "plainly wrong or without evidence to support it."  Code § 8.01-680; Rogers, 270 Va. at 478, 621 S.E.2d at 65.  Upon applying these principles, if it appears that a judgment is plainly wrong or without evidence to support it, we must set it aside.  Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003).

RGR asserts that the circuit court erred by denying its motions to strike and to set aside the verdict because Settle was contributorily negligent as a matter of law.  RGR contends that Settle was familiar with the Kapp Valley Way crossing, that although other individuals heard the train's horn when it approached the Route 15 crossing, he did not look to his right or left and did not stop before attempting to cross the railroad tracks despite the approaching train.  According to RGR, Settle failed to exercise reasonable care before crossing the tracks and his failure to do so was a proximate cause of the accident.

As Settle approached the Kapp Valley Way railroad crossing, he "had the duty to look and listen with reasonable care; he did not have the absolute duty to discover the presence of the train, unless by so looking and listening he was bound to have

11

discovered it." Norfolk & W. Ry. Co. v. Greenfield, 219 Va. 122, 132, 244 S.E.2d 781, 786-87 (1978).[5] "Repeatedly, we have said that a railroad track is a proclamation of danger and the operator of a vehicle approaching a grade crossing 'is required to look and listen at a time and place when both looking and listening will be effective,' intelligently using both eyes and ears." Wright v. Norfolk & W. Ry. Co., 245 Va. 160, 171, 427 S.E.2d 724, 730 (1993) (quoting Norfolk & W. Ry. Co. v. Epling, 189 Va. 551, 557, 53 S.E.2d 817, 820 (1949)). Further, "[i]f a traveler drives blindly upon a crossing whether his view is obstructed or unobstructed, takes no precautions for his safety and is injured, his negligence will preclude any recovery on his part." Southern Ry. Co. v. Campbell, 172 Va. 311, 318, 1 S.E.2d 255, 258 (1939). "'He can not wait until his view is obstructed and say it would have been useless for him to have looked then.'" Id. (quoting Virginian Ry. Co. v. Rodgers, 170 Va. 581, 587, 197 S.E. 476, 478 (1938)).

We applied these principles in Wright, the facts of which are strikingly similar to those in this case. There, the

---

[5] The jury was instructed that "[a] driver crossing train tracks has the duty to look and listen with reasonable care; he [does] not have the absolute duty to discover the presence of the train, unless by so looking and listening he was bound to have discovered it," and that a driver has the "duty to use ordinary care to look and listen effectively for an approaching train before crossing the tracks," even if the railroad failed to sound a horn, and "to stay off the tracks if he becomes aware of an approaching train."

plaintiff, an experienced dump truck driver, was "thoroughly familiar" with a public railroad crossing, having "traversed it in his truck on nine occasions during a two-day period before" a collision occurred between his truck and a train. Wright, 245 Va. at 171, 427 S.E.2d at 730. The plaintiff was aware that he needed to rely on his senses of sight and sound to detect an approaching train because there were no automatic warning devices at the crossing. Id. He further knew of "the limitations to sight and hearing" due to the configuration of his truck's cab and the angle of the street relative to the railroad tracks. Id. Nevertheless, the plaintiff "drove his truck from a stopped position of safety onto the crossing directly in front of the train when its engine was less than ten feet away." Id.

The plaintiff's experts testified that it was "impossible" for the plaintiff to have seen or heard the train and that the crossing was "not reasonably safe" and "ultrahazardous." Id. at 164-65, 427 S.E.2d at 726 (internal quotation marks omitted). Nevertheless, the trial court concluded that the plaintiff was contributorily negligent as a matter of law. We agreed, stating that the plaintiff, "knowing the dangers to be encountered at the crossing," could have taken numerous steps to avoid the collision, including "open[ing] his window after his truck had been loaded and before [leaving] the quarry [or] making a wider

13

right turn, thus bringing his truck to an attitude with relation to the crossing that he could see clearly north along the track." Id. at 171-72, 427 S.E.2d at 730. But, the plaintiff did none of those things and thereby caused the accident. Id. at 172, 427 S.E.2d at 730; see also Greenfield, 219 Va. at 133, 244 S.E.2d at 787.

We reach the same conclusion in this case. The uncontradicted evidence established that Settle was familiar with the crossing, having proceeded through it numerous times on the day of the accident. So, he had notice of the limited sightline posed by the configuration of the lumber stacks and the angle of the tracks to both east and west. In light of this known danger, "reasonable care" required Settle to approach the crossing in such a way that would allow him to stop before reaching the tracks if, by looking and listening, he was bound to detect an approaching train. See Campbell, 172 Va. at 317, 1 S.E.2d at 257 ("A traveler . . . must always exercise care proportioned to the known danger, and this care must be such as one who knows the danger and of the prior right of passage [of the moving train] would be expected to exercise.").

According to the individuals who witnessed the accident, Settle was traveling slowly as he approached the crossing, at a speed of approximately five miles per hour or less. Regardless of his speed, Settle did not approach the crossing in a manner

14

that would have enabled him to stop when looking and listening with reasonable care would have revealed the presence of the train. Either Settle failed to look and listen with reasonable care; or if he did so, he failed to see the plainly visible approaching train; or if he did observe the train, he failed to stop before traveling onto the tracks. Under any of these scenarios, Settle failed to exercise reasonable care for his own safety despite the known dangerous sightline at the Kapp Valley Way crossing. See Norfolk & W. Ry. Co. v. Benton, 160 Va. 633, 641, 169 S.E. 560, 563 (1933) (holding that the plaintiff "either did not look toward the approaching train which was in his plain view practically all the time, or if he looked no heed was given to it" and that "[s]uch conduct in either event [was] contributory negligence as a matter of law"); Norfolk & W. Ry. Co. v. Hardy, 152 Va. 783, 796, 148 S.E. 839, 842 (1929) (same); Rodgers, 170 Va. at 589, 197 S.E. at 479 (same). Settle's failure to do so was negligence as a matter of law and that negligence was a proximate cause of the accident and his death. See Ford Motor Co. v. Boomer, 285 Va. 141, 150, 736 S.E.2d 724, 728 (2013) ("The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces that event, and without which that event would not have occurred.") (internal quotation marks and citation omitted).

15

In contrast to the facts in <u>Wright</u> and in this case, those in <u>Campbell</u> were such that a jury, not the trial court, should determine whether the plaintiff there was contributorily negligent. In <u>Campbell</u>, obstructions prevented the plaintiff from having a clear view of the railroad tracks for trains approaching from the right until the front of his truck was near the rails. 172 Va. at 315, 1 S.E.2d at 256. The automatic warning gong with a red light in its center was flashing when the train moved forward over the crossing and stopped when the train advanced beyond the crossing. <u>Id.</u> After lowering his window, looking, and listening, the plaintiff believed that the train had passed on and thus drove slowly onto the crossing, when his truck was struck by the backward movement of the train coming from the plaintiff's right. <u>Id.</u> We concluded that the plaintiff's "conduct on approaching the crossing under the surrounding conditions, measured by what a prudent man in the exercise of ordinary care would have done under like circumstances, was at least such as would cause fair-minded men to differ." <u>Id.</u> at 319, 1 S.E.2d at 258. We cannot say the same with regard to Settle's conduct.

Mrs. Settle, however, argues that the question of contributory negligence was for the jury because pertinent facts were disputed and because Settle faced a predicament at the crossing, helpless to oncoming trains whether he stopped at the

16

crossing or approached it slowly.  If Settle had stopped his truck just past the lumber stacks so he could see a train coming from the west, Mrs. Settle contends, he would have been unable to get his dump truck moving fast enough to safely cross the tracks before a train — not viewable at the time he stopped — could have approached from the east, where a curve in the track limited Settle's visibility to 600 feet.  Because Settle's truck, when fully loaded, could accelerate at the rate of only one-to-two miles per hour in first gear and three-to-four miles per hour in second gear and because shifting gears in the truck took additional time, Mrs. Settle argues that stopping to look for oncoming trains would have put Settle at great risk to be hit by a train approaching from the east.

This argument overlooks the facts of the case.  First, as the jury was instructed, Settle had no duty to stop, only the "duty to use ordinary care to look and listen effectively for an approaching train before crossing the tracks."  Second, we are not faced with a situation where a train was approaching from the east outside Settle's visibility range.  Instead, there is no question that the train approached from the west and was visible when Settle passed the lumber stacks and before he reached the crossing.  By looking and listening with reasonable care as he approached the crossing, Settle could have seen the immediate presence of the train and reacted in time to stop and

17

avoid the collision.[6]  See Washington & Old Dominion Ry. Co. v.

Zell, 118 Va. 755, 759, 88 S.E. 309, 310 (1915) (noting that the

contention that the plaintiff had to be close to the railroad

tracks before he could see any distance to the west

"emphasize[d] the importance of caution on his part").  Because

he failed to do so, Settle was, tragically, like the plaintiff

in Wright, "the architect of his own misfortune."  245 Va. at

172, 427 S.E.2d at 730.

CONCLUSION

For these reasons, we will reverse the circuit court's

judgment and enter final judgment for RGR.[7]


Reversed and final judgment.

---

[6] Indeed, according to Mrs. Settle's allegations, the crossbuck sign at this railroad crossing "warn[s] a driver to be prepared to slow down, look and listen for a train with reasonable care, and be prepared to stop if he can reasonably determine that a train is in dangerous proximity to the crossing."

[7] In light of our decision, it is not necessary to address RGR's other assignments of error.

18



JUSTICE POWELL, with whom JUSTICE MIMS joins, dissenting.

In my opinion, the majority's holding is not supported by our jurisprudence with regard to contributory negligence. Therefore, I must respectfully dissent.

> Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances. The essential concept of contributory negligence is carelessness.

Jenkins v. Pyles, 269 Va. 383, 388, 611 S.E.2d 404, 407 (2005) (citations omitted).

According to the majority, Settle was contributorily negligent as a matter of law because "[r]egardless of his speed,

Settle did not approach the crossing in a manner that would have enabled him to stop when [1] looking and listening with reasonable care would have revealed the presence of the train." In so holding, the majority seemingly disregards case law establishing that such a determination is a question of fact to be determined by a jury.

In Southern Railway Co. v. Bryant, 95 Va. 212, 219, 28 S.E. 183, 185 (1897), this Court specifically held that:

> Where the view of the track is obstructed, and the railroad company has failed to give notice of the approach of its train to a crossing upon the highway, and a person in attempting to go across the track, not being able to see the train on account of obstructions, and being obliged to act upon his judgment at the time of crossing, is injured, the propriety of his going upon the

---

[1] In my opinion, the use of the word "when" changes the focus of this factual inquiry. The majority cites Southern Railway Co. v. Campbell, 172 Va. 311, 317, 1 S.E.2d 255, 257 (1939), for the proposition that "reasonable care" required Settle to approach the crossing in such a way that would allow him to stop before reaching the tracks "if," by looking and listening, he was bound to detect an approaching train. Indeed, the jury was instructed, inter alia, that a driver has the "duty to use ordinary care to look and listen effectively for an approaching train before crossing the tracks, "even if the railroad failed to sound a horn," and "to stay off the tracks 'if' he becomes aware of an approaching train." The word "if" is conditional requiring the jury to determine whether Settle became aware of the train. The use of the word "when," however, makes it inevitable that he would become aware. The use of the word "if" in the jury instructions clearly left it to the fact finder to determine whether Settle was contributorily negligent.

20

> track under such circumstances is not a
> question of law to be decided by the court,
> but a matter of fact to be determined by the
> jury.

(Emphasis added.)

Similarly, in Southern Railway Co. v. Campbell, 172 Va. 311, 322, 1 S.E.2d 255, 259 (1939), a case factually similar to the present case, this Court specifically held that the question of contributory negligence is a question for the jury.

> If his view is obstructed and he exercises a
> reasonable degree of caution, drives slowly,
> looks and listens for trains but sees none,
> proceeds in a cautious manner over the
> tracks and is injured, the question of
> whether he was negligent under all of the
> circumstances must be for the jury.

Id. (emphasis added).

The evidence in this case demonstrates that Settle exercised a reasonable degree of caution as he approached the railroad crossing, as he slowed down to somewhere between walking speed and five miles per hour as he approached. Indeed, at trial, RGR actually put on evidence that other drivers approached the crossing in the same manner as Settle, (i.e., slowing down as they approached the crossing but not coming to a complete stop). Further, it is apparent that he reasonably believed that no train was coming as he approached the tracks. Several witnesses testified that the train did not blow its whistle as it approached the crossing, and thus, viewed in the

21

light most favorable to Mrs. Settle, this evidence indicates that Settle had no auditory warning that a train was coming. Additionally, the lumber stacks blocked his view of any approaching trains until his truck was approximately 12.5 feet[2] from the tracks.[3]  Thus, because there is evidence in the record from which a jury could have found that Settle exercised a

_____

[2] The right-of-way spans 30 feet from the midpoint of the tracks and the tracks are five feet wide, meaning that the right-of-way only extends 27.5 feet on either side of the tracks.  The parties stipulated at trial that the lumber pile was seven feet inside the right-of-way (i.e., 20.5 feet from the edge of the tracks closest to Settle's truck) and that it was eight feet from the front bumper of Settle's truck to the rear of the cab.  Thus, at the earliest point where Settle's view was no longer obstructed by the lumber pile, the front bumper of his truck was approximately 12.5 feet from the tracks.

[3] While it is true that Settle could have stopped prior to this point, doing so would have proven futile.  It is indisputable that, prior to the point where the front of Settle's truck was 12.5 feet from the tracks, his view was completely obstructed by the lumber stacks. Furthermore, there is evidence in the record indicating that stopping at this point would have potentially exposed Settle to danger from a train coming from the other direction.  Only 600 feet of track was visible to the east.  A westbound train traveling at the same speed as the eastbound train, approximately 45 miles per hour, in this case would cross that distance in approximately 9.1 seconds.  A driver of a truck similar to Settle's, stopped at a point beyond the lumber stacks close enough to visualize the track to the west, would have to cross more than 47.5 feet to clear the track: at least the 12.5 feet remaining between the front bumper and the track, the 5-foot width of the track itself, and the 30-foot length of the truck.  To cover those 47.5 feet in the time it would take a westbound train traveling at 45 miles per hour to cover the 600 feet of visible track would require a continuous speed exceeding 3.5 miles per hour.  Coming from a dead-stop, such a feat would be impossible given the truck that Settle was driving.  Thus, the lumber stacks created a situation that made the crossing both dangerous to stop at and dangerous to go through.

reasonable degree of caution, drove slowly, looked and listened as best he could under the circumstances, and proceeded in a cautious manner, according to this Court in Campbell, the question of whether Settle was contributorily negligent is a matter to be decided by a jury.

According to the majority, Settle either "failed to look and listen with reasonable care; or if he did so, he failed to see the plainly visible approaching train; or if he did observe the train, he failed to stop before traveling onto the tracks." As I previously explained, there was evidence from which a fact finder could have found that Settle looked and listened as best he could under the circumstances. Further, there is evidence that the train was not plainly visible due to the location of the lumber stack. Thus, the only remaining basis for finding Settle contributorily negligent as a matter of law would be that Settle failed to stop before traveling onto the tracks. Notably, this rationale has never been relied upon by this Court as the basis for finding contributory negligence as a matter of law. Rather, the general rule has been announced that whether one crossing a railroad grade is required to stop before going thereon is a question for the jury under proper instructions. Campbell, 172 Va. at 317, 1 S.E.2d at 257. Indeed, in deciding contributory negligence as a matter of law, this Court has always looked to whether the driver took no heed of the

23

approaching train.  See Norfolk & W. Ry. Co. v. Benton, 160 Va. 633, 641, 169 S.E. 560, 563 (1933) (holding that a driver was contributorily negligent if he "either did not look toward the approaching train which was in his plain view practically all the time, or if he looked [and] no heed was given to it") (emphasis added).  Under this rationale, every driver involved in a collision at a crossing with an obstructed view must necessarily be contributorily negligent as a matter of law because the mere fact that the collision occurred demonstrates that the driver ultimately "failed to stop before traveling onto the tracks."

Furthermore, such an approach fails to take into account that Settle's failure to stop may have been the result of the RGR's negligence.  This Court has specifically recognized that it is for the jury to consider whether the negligence of the tortfeasor affected the actions of the driver.  See Kimball v. Friend, 95 Va. 125, 138-39, 27 S.E. 901, 903 (1897).  Today, however, the majority has failed to give any consideration to the effect that RGR's negligence may have had upon Settle's actions.

This Court has long recognized that the objective standard applicable to railroad crossings is that a driver approaching a crossing has "the duty to look and listen with reasonable care; he [does] not have the absolute duty to discover the presence of

the train, unless by so looking and listening he was bound to have discovered it."  Norfolk & W. Ry. Co. v. Greenfield, 219 Va. 122, 132, 244 S.E.2d 781, 786-87 (1978).  Further, this Court has gone so far as to recognize the existence of the presumption that an individual approaching a crossing has fulfilled the duty to look and listen.  Kimball, 95 Va. at 139, 27 S.E. at 903 ("Where a traveller is killed at a railroad crossing, and the negligence of the railroad company is established, in the absence of evidence to the contrary, the presumption is, though, perhaps slight, that the traveller did his duty in approaching the crossing.").  By declining to impose an absolute duty and creating such a presumption, this Court has implicitly recognized that there are situations where an individual exercising reasonable care will not become aware of the presence of a train until it is too late to stop.

Although the majority states that the facts in Wright are "strikingly similar to those in the present case," it ignores the most significant fact of that case, a fact which distinguishes Wright from the present case: in Wright, the driver was unaware of the approaching train as a direct result of his own unreasonable actions.  Specifically, this Court recognized that the driver's view was obstructed because he failed to take a wide enough right turn to bring "his truck to an attitude with relation to the crossing that he could see

25

clearly." Wright v. Norfolk & W. Ry. Co., 245 Va. 160, 171-72, 427 S.E.2d 724, 730 (1993). In the present case, however, Settle's obstructed view was caused by RGR's placement of the lumber stacks. Short of physically moving the lumber stacks himself, there was nothing that Settle could have done to avoid having his view obstructed by the lumber stacks without imperiling himself to a train approaching from the other direction. Thus, Wright is wholly inapposite to the present case.

Rather, in my opinion, the facts in this case are more akin to Campbell. In both cases, the drivers' view of the tracks was obscured in one direction, such that the drivers were "prevented . . . from obtaining a clear view of the track for trains approaching from the right until the front of the truck was quite near the rails." Campbell, 172 Va. at 315, 1 S.E.2d at 256. In both cases, the drivers approached the crossing "cautiously and slowly." Id. In Campbell, there was affirmative evidence that the driver looked and listened for an oncoming train. Id. As I previously noted, there is evidence in the present case from which a jury could find that, to the extent that he was able to, Settle did the same. The only significant difference in the cases is the presence of a silent warning gong in Campbell, while there was no warning gong at all in the present case. However, this amounts to the functional

equivalent of the train's failure to sound its horn as it approached the crossing in the present case. In both situations, a driver would expect to hear the whistle or the warning gong if a train was approaching. Thus, the failure to sound the whistle is the functional equivalent of a non-functioning warning gong and, therefore, it is merely a factor for the jury to consider in determining whether the driver exercised reasonable precaution under the circumstances. Id. at 322-23, 1 S.E.2d at 259-60.

As I do not believe that Settle was contributorily negligent as a matter of law, nor do I believe the trial court erred in any other respect, I would affirm the decision of the trial court in its entirety.